Memorandum in support of Complaint P.1
- It has taken P 5½ months simply to prepare this Complaint.
- P has never litigated a civil rights case.
- P has never litigated any case in U.S. District
Court and is not familiar with its Court Rules or Fed Rules of Evidence.
- P is not familiar with the vast body of civil
rights law and the multiple complex
Constitutional law issues arising out of
defendant's OUTRAGEOUS conduct.
- Title II Del. C. §1304 "Hate Crimes" states in pertinent parts
"Any person who commits, or attempts to commit, any crime as
defined by the laws of this state, and who intentionally (1)
commits said crime for the purpose of interfering with the
victim's free expression or enjoyment of any right, privilege
or immunity protected by the First Amendment of the United
States Constitution, or commits said crime because the victim
has exercised or enjoyed said rights..." = Hate Crime

SHO law Library
will not
allow copy of
complete
statute

This applies to the theft of P's writing instruments,
theft of P's envelopes, theft of P's Complaint in #07593,
theft of P's letter to David Ledford of the News Journal, P's
false imprisonment as described herein above, Conspiracy to
engage in all of the above acts and crimes, all of the
Constitutional crimes mentioned herein, theft of P's daily notes,
the theft of P's pen when S took it from P's pocket and said "OH Look!
You tried to stab me with your pen," JACKASS bona fide, ipso facto per se
res ipsa loquitur JACKASS.
- In the nearly 6 months it has taken to prepare this pleading,
P has relied on references to (and one or two line quotes from)
many cases & No time to read the case as response from SHO Law

FILED
MAY 23 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Library takes 4 to 30 days and P is allowed only 5 cases at a time.

- "We must accept as true the factual allegations in the Complaint and all reasonable inferences that can be drawn therefrom" Nami v. Fauver 82 F²ᵈ 63, 65 (3ᵈ Cir 1996), Allah v. Seiverling, 229 F²ᵈ 220 (3ᵈ Cir. 2000). The Court is required to review the alleged facts "in the light most favorable" to the claimant and only dismiss the action if it appears inconceivable that the plaintiff could produce evidence justifying relief under any legal theory. Conley v. Gibson, 355 US 41, 78 S.Ct. 99 2 L.Ed. 80 (1957). A pro se complaint can only be dismissed for failure to state a claim when "it appears 'beyond doubt' that the plaintiff can prove no set of facts in support of his claim, and the complaint, however inartfully pleaded must be held to less stringent standards than... drafted by lawyers." Erickson v. Pardos, 127 S.Ct. 2197 (2007), Smith v. Mensinger, 293 F 64 (3ᵈ 2002)

- P's action clearly is not frivolous or malicious, states many claims on which relief may be granted, and does not seek damages from defendants who are immune from such relief because defendants acted with wanton or gross negligence and deliberate indifference (actually, with intent)

- P seeks damages award for the deprivation of the right (on each occurance) and the consequential injury which resulted. Carey v. Piphus, 435 US 247, 266 98 S.Ct. 1012 (1978), Owen v. Lash, 682 F²ᵈ 648, 657 (7ᵗʰ Cir 1982) Herrera v. Valentine, 653 F²ᵈ 1220 (8ᵗʰ Cir 1981),

- On 11/12/07 Daud S acted with corrupt motive, in bad faith, maliciously (Do you think someone who refers to a Federal Judge as "a little cocksucker in a robe" and "a powerless fuckhead" might act maliciously?), sadistically, intentionally, willfully, wantonly, and with reckless disregard for known rights of P.

- P notes that the other two guards present during the events of 11/12/07 are also liable (see Smith v. Mensinger, 293 F²ᵈ 64 (3ᵈ Cir 2002) at paragraph 17)

Memorandum P[3]

- The "We stick together" factor.

- P also contends, separate and apart from any legal theory he has encountered, that this institution's (C.C.I., W.P., and many) entrenched, pervasive, policy pattern and practice, widespread so as to occur in nearly every instance, of ignoring the truth, denying, in effect, grievances before they are submitted, ignoring grievances ("See Complaint re statements" "I gotta go by these write ups" etc) constitutes a violation of the 14th and 8th Amendments cruel and unusual and degrading punishment, the constant false accusations, the cumulative aggregate effect, with no impartial tribunal to consider recourse (and the manifest PRETEXT thereof), the continuous "rubber stamping" cover up of subordinates decisions are calculated as punishment. (prolonged further punishment—"how dare you complain" "how dare you accuse us of lying" etc calculated to harm, therefore Unconstitutional. It is a System, a Management woefully devoid of ethics, integrity, impartiality, honesty. So, EXTREME in its consistency as to rise to Constitutional dimension. This practice, this policy surely contravenes "the evolving standards of decency that mark the progress of a maturing Society." Trop v. Dulles 356 US 86, 78 s.ct 590, 2 L.Ed.2d 630 (1958) Although not the torture and other barbarous modes of physical punishment which perhaps gave rise to the 8th Amendment, it certainly violates "contemporary standards of decency" Hudson v. McMillian, 503 US, 112 s.ct 995, 1000 117 L.Ed.2d 156 (1992)

*See note bottom of next page.*

Or am I arguing the "deliberate indifference" argument
of Wilson v. Seiter, 501US294,111 SCt.2321,2323, 115LEd 2d 271(1991)
Estelle v Gamble, 429 US97,104/105,97 SCt.285, 50LEd2d 251(1976) and
other cases. It is established that allegations of mental anxiety,
"fear, mental anguish and misery" can cause sufficient pain to violate
the 8th Amendment. Scher v. Engelke, 943F2d 921(8th Circuit 1991), White
v. Napoleon, 892 F2d 103,111(3d Cir1990). Delaney v DeVella, 2567356, CII
Cir 2001). Is not some minimum modicum degree of impartial fairness
secured by the 8th Amendment? Here, the profound continuous denial
of the Truth, suppression of the Truth, passes indifference into
intentional malice! Such is the deterioration of the operation of this prison.
Ⓐ ➤ In any event, punishment in solitary for no offense or
for exercise of protected constitutional rights (which P will prove)
would be (is), a fortiori, disproportionate and cruel and unusual."
Morgan v. LaVallee, 526 F2d 221 (2d Cir 1975), Johnson v. Anderson, 370
F Supp 1373, 1388 n3 (D Del. 1974), David Son v Cherthu t, 1998 WL 436527
(SDNY 1998) Lack of physical injury is not a bar to an 8th Amendment
claim. ➤ The absence of serious injury is therefore relevant to the Eighth
Amendment injury but does not end it." Hudson v. McMillian.

Ⓒⓞⓜⓘⓝⓖ
➤ Falling back to the liability of CD and WP P contends that
the conduct (or lack therof) of both is at least deliberate
indifference, and that a Trier of fact can conclude that
they (and "Hearing officer Savage) acted with gross or
wanton Negligence." Since conscious indifference is almost
never admitted, it may be proved only by the conduct and
circumstances". Prosser + Keeton on Torts §34 (5th ed 1984).

Ⓝ No, there is a difference. I describe something more nefarious than any
"indifference." There is a custom, a policy, embedded here which is
more akin to "Cover-up" than indifference,

Memorandum p5

- theft. P has alleged several instances of theft. P has done no legal research here - The meaning of "Theft" is so plain and clear; the wrongful taking the property of another without permission or consent. To dismiss these thefts as "frivolous" P respectfully suggests is to miss the point. The Thefts mentioned were calculated to thwart, interfere with, P's exercise of Constitutional rights. When guards (B+S) knew P was engaged in a flurry of activity, writing to News Journal, Sen. Joe Biden, Ray Tile Castle, FBI, US. Dept, of Justice, (locally - Wilmington and in DC.), State Dept of Justice, Col Maclersh, Del State Police, Dick Wier, Esq, Charlie Oberly, Esq, Gene Maurer Esq, Jro Hurley Esq, Sen Tom Carper, Family members, Tom Neuberger, Esq, The ACLU, Trying to "get the ear" of somebody to start an investigation which would lead to the arrest of guards Costello and Manp, and was suing them in Dist Court, they stole all writing, instruments and envelopes!!! Stole the only copy of Complaint in 07595. Stole out going US Mail. These thefts are hardly frivolous; They are calculated, malicious Unconstitutional acts!! The thefts which P has not alleged ————— (by B+S) are "frivolous." They stole Shampoo, deodorant, markers, gloves, hat - frivolous but outlandout thefts nonetheless!, They have no concept that the law applies to them!!
          P was harmed by the thefts alleged. P lacked a copy of Complaint to respond to the surprise Order of 12/4/05. In

Case 07-593, dismissing most counts, P was in a state of great stress emerging from the Hole with no pens, pencil or envelopes, trying to respond to said Order, trying to attract attention to defendants' OUTRAGEOUS conduct, trying to file a Rule 35 Mot. in in Del Superior Court prior to looming (due 4/13/17) deadline. The stress is difficult to discribe, Knowing these lying thugs get away with "breaking the law so brazenly. EVERYBODY knows theft of US. Mail is a crime!! Hardly frivolous The thefts complained of in the Complaint are violations of 1st and 14th Amendments. Deliberate, wilfull, malicious, calculated to stop and intimidate P. And the institution [see    Complaint paragraphs regarding "grievances"     (all ignored regarding the thefts)] condones all of this!! As the guards are fond of saying: "We stick together!" he thefts are torts and are unconstitutional civil rights violations!

Bad torts ->

Memorandum P.1

— The FALSE charges concocted by B+S on 11/12/07, putting P in SHU for two years, Hole for 15 days, and removing P from "Green Tree Program" are a violation of Due Process. The consequences rise to an "atypical and significant hardship in relation to the Ordinary incidents of prison life," Smith v Mensinger, 293 F 641 (3rd 2002), Griffin v Vaugh, 112 F 3rd 703 (3rd 1997), Sandin v Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed. 2d 418 (1995). This is true due to facts stated above and the fact that defendant's actions triggered a 5 year sentence, as they knew and intended. Quoting Smith at 921" Prison disciplinary proceedings may constitute a denial of due process in the context of a civil rights action under §1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right. In Allah v. Seiverling 229 F 3rd 220 (3rd Cir 2000 we stated: Sandin instructs that placement in administrative confinement will generally not create a liberty interest. Retaliation may be actionable however, even when the retaliatory action does not involve a liberty interest, Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." The conduct on 11/12 and the subsequent refusal to acknowledge the truth throughout

the "grievance" process, all were to punish P for filing case 07-593, seeking to have those guards arrested,

and writing to the News Journal. See also Caldy v. Johnson, 86/F²⁹ 943 (6ᵗʰ Cir, 1988), Sprouse v. Babcock, 870 F²ᵈ 450 (8ᵗʰ Cir 1989), Harbury v. Deutch, 233 F³ᵈ 596 (D.C. Cir 2000). The cases of Wolff v. McDonnell, 418 U.S. 539, 94 S.CT. 2963, 41 L.Ed 2ᵈ (1974), Utek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed²ᵈ 552 (1980) and Meachum v. Fane, 427 U.S. 2515, 96 S.Ct. 2532, 49 L.Ed 2ᵈ 451 (1976) also support P's argument here on Due Process. Furthermore, Sandin, while stating that the Due Process Clause standing alone confers no liberty interest in freedom from state action taken "within the sentence imposed" clearly states that a violation exists or occurs where the State action "will inevitably affect the duration of the sentence." Sandin @ p 2302. In P's case; The wrongful removal of P from "Greentree Program" Triggered the 5 year sentence, meant to be suspended. This is Ⓐ The "more" in the phrase; "The filing of false disciplinary charges and related disciplinary sanctions without more do not violate his Constitutional rights under the Due Process Clause."

Ⓑ See also Higgason v. Farley, 83 F³ᵈ 807 (7ᵗʰ Cir 1996) and Nicholas v. Pataki, 233 A.D. 2ᵈ 657, 650 NYS 2ᵈ 317 (1996), Chambers v. Colorado DOC, 205 F3ᵈ 1237 (10ᵗʰ Cir 2000);
P's claim is further supported by Allah v. Seiverling, 229 F³ᵈ 220 (3ᵈ Cir 2000) where the Court states, quoting also Suprah v. Jadonna, 203 F³ᵈ 228 (3ᵈ 2000), Ⓐ "a fact finder could conclude that the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Quoting Bart v Telford, 677 F²⁹ 622 (7ᵗʰ Cir 1982). "E.D." + "iut."
"Many people, "some known, some unknowable - over an extended period of time have contributed to making, or failed to correct this particular prison condition (deliberate indifference to unjust punishments by lying guards). Wilson v Seiter language.

Memorandum p.9

As also stated in _Wilson v Seiter_ I see also _Hope v Pelzer_, 240
F³ᵈ 975 (11ᵗʰ Cir 2001) _Oxendine v. Kaplan_, 2001 F³ᵈ 1292 (10ᵗʰ Cir 2001)
_Johnson v Herman_, 132 F Supp 2ᵈ 1130 (N D Ind 2001) ] ▼ If prison
officials know, or should know of deprivations of basic
human needs in their institutions and have not remedied them,
deliberate indifference is established. Thus, when officials
proceed with obvious disregard of problems, accountability is
established for those with responsibility for the institution, here,
P will prove ample evidence of "CD" and "WP" proceeding
with obvious disregard of many unlawful acts, by various
guards so a jury certainly can conclude they should have known
~~court finding~~ Conditions and duration of solitary confinement,
even when not considered cruel and unusual in the abstract, may
become so if the punishment is disproportionate to the inmate's
offense. Of Course, this is the heart of the case here, P's only
infraction on 11/12 was having some pills out of their containers
(which other guards had seen many times and said nothing - equitable
estoppel?), No profanity, No "lying to staff", no "attempt
to stab Lt with pen" etc. P is in the Hole, in the SHU, for
writing to the _News Journal_, suing guards, writing to others, trying
properly to get these guards arrested ? _Adams v Carlson_, 368
F Supp. 1050 (EDIll 1973)
— "P is seeking PUNITIVE damages "to punish the
defendants for their outrageous conduct and "to deter them
and others like them from similar conduct in the future"
_Smith v. Wade_, 461 US. 1035 (t. 1625, 75 L Ed 2ᵈ 632 1983), _Stokes
v. DeLambre_, 710 F²ᵈ 1120 (5ᵗʰ Cir 1983). the very reason
these guards do what they do is that they have gotten

away with it for years. Nobody (where is the Federal Judiciary?!) does anything about it, The Commissioner and Warden and the entire pathetic "chain of command" tolerate, condone, or encourage it, Law enforcement refuses to protect prisoners with legitimate complaints. Surely the conduct P alleges, if proven (as it will be), against R+S warrants a discussion of significant punitive damages, Absolutely necessary for their "Gross reckless (actually intentional) disregard for known rights of others." Reiser v. Dist. of Columbia, 563 F2d 462, 183 USAppD.C.325. "Conscious indifference to consequences of conduct which defendant knew or should have known (had reason to know) was about to inflict injury." King v. Higgins, 702 F2d 18 (1st Cir 1983) Black v Brown, 524 FSupp856 (N.D. Ill 1981), Johnson v. Anderson, 420 FSupp 845 (D. Del 1976). As stated, supervisory liability may attach (to "CD"+"WP") if the defendant implemented deficient policies (here the ludicrously biased "predetermined outcome" "Ego Na go by these write ups" "grievance process" and the lawless atmosphere) and was deliberately indifferent to the resulting risk." Sample v Diecks, 885 F2d 1099, 1117-18 (3d Cir 1989). City of Canton, Haggin Miller

— Request for Counsel, P acknowledges there is no right to Counsel. The factors to be considered by the Court in assessing the request include: (1) P's ability to present case (2) difficulty of the particular legal issues (3) Degree of need for factual investigation + P's ability to investigate (4) P's capacity to retain one (5) role of credibility determinations likely at trial, (6) whether expert is needed.

Memorandum P.W

taking
these orders
in

(1) P has never tried a civil rights case. P is, in the SHU where legal research is severely circumscribed as discussed herein above. P has no experience with or working knowledge of Federal Rules. P's request for same has been denied—p was given a "table of contents" which is in itself unclear and confusing. P is unable to communicate with witnesses - other inmates, strictly forbidden by prison policy.

(2) Perhaps the most compelling reason P needs counsel, P has not practiced since 1983. The actions (and inactions) of the defendants give rise to so many complex Constitutional and other legal issues That P is truly bewildered. Having mentioned it, quoted references to it, read cases about it, P still have no understanding of what "liberty interest" means." We have torts, crimes, Constitutional violations, all needing to be explained carefully to the finder of fact and argued persuasively to the Court. P cannot do this. Also, we all know there is an advantage to oral argument - actually appearing before the Court to make a point. Though many issues properly are determined without argument, those with counsel are more far more able to physically appear when appropriate. Prisoners are practically never asked or permitted to appear. It's a significant difference,

(3) Investigation is necessary, primarily to interview and prepare for trial other inmates similarly punished for the lawful exercise of Constitutionally protected rights. This is a HUGE factor, particularly as it relates to the liability of CD and WP (showing a practice, pattern,

policy, custom of indifference to the truth) to establish
clearly the requisite "deliberate indifference" to lawless
—acts by subordinates and as it relates to the need
for punitive damages. P cannot communicate with inmates!
Investigation is needed. There is long history of rampant false accusations
(4) P is indigent. Has asked several counsel for pro bono or
contingency fee help, recognizing the necessity in to no avail.
P cannot retain counsel. My prayer for Tom Neuberger to come to
the rescue is unanswered.
(5) It should be quite obvious from the circumstances alleged
that "credibility" will determine this case. P must show
that those # Ø & defendants are lying! And will.
(6) P requests and an independant competent expert psychiatrist
or psychologist to perform a thorough "mental health evaluation"
of P, and to examine D+S. These guys clearly are disturbed—
"Bully mentality," anger issues, etc. Other than this P foresees
no need for experts. Controling authorities include Tuberoz,
6 F 155-157, Parhem, 126 F at Ø 7, Montgomery v. Pinchak 294
F 492 (3ʳᵈ Cir 2002)
— P will present sufficient evidence for a jury to find
"CD" and "WP" liable; and it is a jury, 12 ordinary
people with common sense, who should make that determination.
P suggests that this Court cannot conclude otherwise until the
evidence is in. Does it support the possibility of a jury
finding CD+WP liable in accordance with The Court's
instructions (re. "deliberate indifference," etc.)? It will.
P and others will be testifying about unlawful DOC retaliation
against those who seek simply to exercise their
Constitutional (not an alien set of principles drawn from a
distant culture"!) Rights!
See last page of this "Memo"

(right margin, vertical): with no counsel.

Memo p. 13

— Furthermore, the discovery process should be allowed to proceed, to determine such things as; (1) how many times have B and S been sued, for civil rights violations, eliciting some specifics — details of the allegations, the parties, etc. (2) How many times have CD + WP been sued for civil rights violations — get the pertinent information, (3) How many times have other DOC, DCC. guards been sued for such violations — get the pertinent information.

Whatever the numbers may show, ONE case (this one) with the PUNITIVE damages called for will reduce the cause of such suits, the need for such cases, the workload of this Court.

— FALSE IMPRISONMENT

The criminal, wrongful, malicious, removal of P from the Greentree program triggered a 5 year sentence, constituting false Imprisonment. P was prevented from completing the "program" in 12 months, which would have led to release on probation. B & S caused P's unlawful restraint without reason or justification. It is well established that law enforcement officers are liable for false imprisonment when they seized/arrest someone without probable cause, Bailey v. Kennedy, 349 F3d 731 (4th Cir 2003), P's situation is analogous. Also, one can be liable for false imprisonment by providing false information to a Court, Simon v. U.S., 711 F2d 740 (5th Cir 1983) The conduct of B & S is precisely the same, making up an account of "assault on stuff" in order to imprison P for 5 years.

— Unreasonable delay in releasing an inmate who has a right to be released constitutes false imprisonment, Whirl v. Will, 66 Cal App 509,

— Today is 5/14/08, P is still awaiting 19 sections of AIP Svc 2 Requested on 4/9/08.

152 P$^{2d}$ 639, (2$^d$ Dist. 1944) Tuft v. City of Tacoma, 7 Wash 2$^d$ 866, 431 P 783 (1965)

Here, P's right to be released (completing the "program") was maliciously prevented.

— Elements of injury to the person imprisoned properly include physical suffering, mental suffering and humiliation, loss of earnings, and injury to reputation and the deprivation of any right caused by the loss of liberty - Kerman v. City of NY 374 F3$^d$ 93 (2$^d$ Cir 2004), Phillips v. Dist of Columbia, 458 A$^{2d}$ 722 (DC 1983) 171 Jur 2$^d$ §142, 143, Humiliation and embarrassment are compensable, also fright and shame. Boggs v. Raynor, 89 Ariz., 257, 361 P$^{2d}$ 1 (1961), Normis v. Gilliland, 813 So. 2$^d$ 98 (Fla, Dist. Ct. App. Dist, 2002) Kraft v City of Bettendorf, 359 Nw 2$^d$ 466 (Iowa 1984), The jury has considerable discretion in determining damages, Washington v. Parlice, 1 Cal App 4th 266, 2 Cal Rptr. 2$^d$ 607 (2$^d$ Dist, 1991), Here, the accusations of "assault on staff," "lying to officer," The accusations of wild uncontrolled profanity all are particularly heinous. Evidence of malice will justify PUNITIVE damages, Tolson v. Dist of Columbia, 860 A$^2$ 336 (DC 2004) and P will prove that the actions of B+S were malicious Retaliation for exercise of Constitutional rights, even if a jury does not find intent (which it will) malice may be inferred from a finding that defendants acted in reckless disregard of P's rights. Simmons v. Dublin, 25 + 6 a App 365, 565 E$^{2d}$ 794 (2002), Jenkins v. Baldwin, 801 So. 2$^d$ 485 (La Ct. App 4th Cir 2001). On P's right to claim PUNITIVE damages, see also Meyer v. Cordell., 1951 OK 33, 2040 Kla 253, 228 P$^2$ 165 (1951) and 17 Jur 2$^d$ §146. An officer who transcends the limits of his authority is responsible for all of the consequences, including false imprisonment, Rumford v Starmont, 189 Mich 188, 102 Nw 662 (1905) Here, defendants acted maliciously, with corrupt motive, intentionally and in bad faith with the specific intent to incarcerate P for 5 years, as punishment for P writing to the News Journal, suing other guards, trying to have those guards arrested by writing to State and Federal law enforcement officials. Defendants are part of an organized pack of lying thugs wearing law enforcement uniforms, as P will prove §

Memo in support of Complaint p.15

→ Interference with contract

P's plea agreement was a contract.

P's Sentencing was a contract,

→ On Sept/19/07, P agreed to plead guilty to one count of felony theft and the State agreed to drop two charges, with the agreement being that P agreed to complete "Greentree Program" and the balance of the sentence, thereupon would be suspended. The plea was entered, & was sentenced, that day, to 5 years/level 5, suspended for "Greentree" program. See P's "status sheet, attached.

⌐ Most prisoners in Greentree are court-ordered there with some portion of incarceration suspended upon completion, as all guards in Victor Bldg are aware

The contract was: P agreed to complete "Greentree program," in exchange for which, the State agreed to suspend the bulk of the level 5 sentence, this was the consideration needed to create an express or implied contract.

→ P was intentionally and maliciously prevented from completing the the contract by the actions of B and S removing him from it (the "program")

→ B and S knew full well that a false charge of "assault on staff" would force P out of the "program," put him in the SHU for at least 2 years (following 15 days in the "hole," as this is prison procedure or po. "cy",

(B+S) They also knew full well that their false

charge would Trigger P's 5 year sentence because:
a) Most enrolled in the "program" have sentences which are suspended for or upon "completion" and,
b) It is readily apparent in the prison computer system (ie in the office of Visitor building where Sands concocted their nefarious scheme) - at a glance - that P was sentenced to 5 years, suspended for "Greentree". This appears on P's "status sheet".

~ The usual duration of "Greentree" is 6 to 18 months. It takes 18 months maximum to complete.

~ P was "placed" by "counselor" Thompson in the program for 18 mos at the same time being told by said "counselor" and by the inmate actually running the program (see P's action for Declaratory Judgment dated April ___ ) that P would be "graduated" within 12 months.

~ P was doing fine in the program, attending more "classes" than required, and had been asked to "teach" one of the classes (although in the program only 4-5 weeks) by the inmate running it, when he was wrongfully removed from the "program."

~ The interference with contract was intentional. Brown v Romero, 922 So. 2d 742 (La Ct. App 3d Cir 2006). Sands acted with the specific purpose of causing interference with a known contract. Lightening L Doe Inc., v Witco Corp, 4 F 3d 1153 (3d Cir 1993). Indeed, said interference was the heart of their scheme — get this guy in the SHU - away from the law library where he can do legal work and type his paperwork, shut him up, limit his contacts, commissary, ability to communicate, intimidate him, and trigger his 5 year sentence.

p. 17

Memo

— When S took P's pen from P's pocket, while P
was handcuffed behind his back, and said "Oh look!
You tried to stab me with your Pen" S also maliciously
quipped "Oh, Daddy won't be home for Christmas 'cause
he got new charges."

B & S's conduct was intentional, but even if a finder
of fact might conclude that they lacked intent to
interfere with Contract, a finding of negligence might
suffice to impose liability for tortious interference. AmJur 2ᵈ §11
    B & S acted maliciously, intentionally without justification
or excuse. Singer v. Beach Trading Co. Inc., 379 NJ Super 63, 876
A 2d 885 (App Div 2005) Indeed, it was retaliation for P's
suing guards, writing to the News Journal, and attempting to
have guards arrested,
    P was in fact damaged. See paragraphs 49, 53, 47,
48, 54 of P's Complaint. Systrends v. Group, LLC, 206 WL 2925323
(Ala. 2006) AmJur 2ᵈ §14,
    B and S were strangers, interlopers, meddlers to the
Contract. AmJur 2ᵈ §26, B and S acted maliciously
intentionally, in bad faith and with corrupt motive.
    P seeks Punitive damages for this claim of interference,
as well as compensatory damages. The issue of Punitive damages
is for the trier of facts. Rossi v. Twinbogo Co., 232 A D 2ᵈ 266,
648 NYS 2d 97 (1996). AmJur 2ᵈ §858, §62, Golden v. Golden,
382 F 3d 348 (3ᵈ Cir 2004)

Memorandum P 19

— Libel — the SHU Law Library could find no law to the effect that a convicted felon, per se, cannot be libeled. See Exhibit T. Research clearly indicated libel is possible.

— "Disciplinary Report" # 1035914 Exhibit I, contains 7 libelous statements, "Disciplinary Report" # 1035912 Exhibit J, contains 9 libelous statements.

— Both reports are completely fabricated, alleging use of profanity, threats, and physical assault toward a law enforcement officer. These reports create a stigmatizing effect and label P as a violent troublemaker within the institution. They are entered into DOC. computer systems. The allegations (FALSE reports) are so wildly wrong in characterizing P and any possible behavior by P that they are libelous.

— P stopped swearing when his son was born 14 years ago, unbeknownst to fool defendants. P would never (a) lie to or (b) assault a law enforcement officer, as character witnesses will attest. In fact, during the incident on 4/12 P did not "become disorderly" at all! P did, calmly, forthrightly and honestly tell Band's that they are a DISGRACE to law enforcement.

— These fabrities are published to be seen by other guards, "counselors," other DOC personnel, and judges, grossly misleading all who read them. D.O.C. personnel rely on such false reports in making many decisions. See, for example Exhibit L, referring to P's "disciplinary history" (which was more false reports!) and Exhibit M where P was denied opportunity to work and earn some money toward restitution due to "extensive write-up history" (More false reports).

P seeks PUNITIVE damages as well as compensatory for these libels.
Perhaps the most OUTRAGEOUS aspect is that lying by D.O.C. personnel is
systemic, a routine practice. Perhaps they are trained to lie, lie, lie.
— While P was in "the Hole" for 15 days "Assault on Staff" was written
in large letters on P's cell door, further disseminating FALSE accusations
made against P for exercising First Amendment rights.
— A charge of assault is libel perse. Weldy v. Piedmont Airlines, Inc.,
985 F²d 57 (2nd Cir 1993) See Exhibit J.

Memorandum p. 21

- The Libel extant in B and S's false reports is virtually _every_ type of libel. Malice described, ? Am Jur 2d, Libel and Slander §5, with numerous supporting cases:

• Malice, defined as ill will or an absence of good faith

• actual malice, defined as traditional common-law malice as knowledge of its falsity or reckless disregard of the truth, or as ill will, recklessness, wantoness, or conscious indifference to the plaintiff's rights

• common law malice, defined as actual ill will, or intent to causelessly and wantonly injure the plaintiff, or as hate, spite, or ill will toward the person about whom a statement has been published

• express malice, defined as ill will or improper purpose, or with the primary motive of injuring the plaintiff

• Malice in fact, defined as a planned purpose and motivation to cause injury to the reputation of the plaintiff

- Has P been harmed? Read the complaint! With more yet to come from D.Q.C. personnel who judge, "classify" P; any real judge who reads these ludicrous reports, etc.

- The libel is libel per _se_; words which impute the commission of a crime @ assault on law enforcement officer and (b) lying to same. Republic Tobacco Cov. North Atlantic Trading Co., Inc., 381 F 3d 717 (7th Cir 2004), Greenv. Tri. Tg Eastern University, 344 Ill App 3d 1079, 801 NE 2d 1208, 144 Ed Law Rep 473, (2d Dist 2003), Phelan v. May Department Stores Co, 443 Mass. 52, 819 N.E. 2d 550 (2004), Wilkerson v. Carlo, 101 Mich App 629, 300 N.W. 2d 658 (1980), Auto West Inc. v. Baggs + § 78 P 2d 286 (Utah 1984), Garrett v. Tandy Corp, 295 F 3d 94 (1st Cir 2002), Landry v. Duncan, 902 So 2d

1098, (La Ct App 5th Cir 2005), The Off v. New York Life Ins Co, 240 F3d 138 (2d Cir 2001), Grubowr. King Media Enterprises, 156 Ohio App 3d, Hoffman v. Ramsey, 312 F3d 1222 (11th Cir 2002) Hearst Corp v. Skeen, 130 SW 3d 910 (Tex App Fort Worth, 2004), Welte v. Piedmont Airlines, 985 F 2d 57 (2d Cir 1993)

— If a statement is defamatory per se, injury to reputation is presumed from the bare fact of the publication, and does not require any allegation of special damages or actual damages; malice will be presumed, and PUNITIVE damages may be awarded. See §362 of AMJur 2d Libel & Slander, §139 and 138, and 180 and the scores of cases cited therein; In short on ink, get out, one pen permonth.

— Calling someone a "liar", even a single such charge, is actionable on it's face. See AMJur 2d Libel and Slander, §193 and cases cited therein.

— Whether Plas been libeled is for the trier of fact, the jury.

— P has been visually libeled by B&S; wearing orange, being taken out, in Public by DOC wearing Orange 3 times so far. See AMJur 2d Libel and Slander.

— The libel by B and S is qualitatively very different from the actual crimes which bring P to jail; using cocaine and stealing money to buy more, to which P admits. Even DOC's own policies acknowledge this, with the numerous punishments P received (See paragraph 49 of Complaint.) as a result of False statements made and published on 11/12/07?

— P is alleging 4 acts of libel, distinct and each one actionable and compensable.(a) Spewing profanity
(b) lying to staff
(c) assault on staff
(d) visual libel,

STU Law Library
- SL

Memorandum p23

— Back to the need for counsel, discussed on pages 10-13 and pages 1+2 of this memo — P is allowed only 5 cases at a time from STU Law Library. It takes 3 or 4 days to over a month to get a response from L (usually 7-12 days) so P has had to rely on secondary references to nearly all cases cited herein.

— P is still (today is 5/10/08 awaiting sections of Am Jur 2d (over a dozen) requested on 4/19/08) which will lead to scores of cases.

Assuming that P can review and outline all 5 cases received — in one day, it would have been impossible to file this case within the statute of limitations had P read cases (- the proper, necessary, way to do legal research), and, indeed, it could take over seven years for P to review the cases cited or mentioned herein!!

Do I need to explain to a judge or law clerk that This is no way to prepare a case? One virtually cannot locate cases directly on point, pursue cross references, quote the precise holding of a case, quote the most persuasive and compelling language on the issue, etc. etc.

In addition to all the other reasons counsel is necessary, it should be manifestly apparent that proper research is one.

And this is just the Complaint!! The State is sure to exploit this problem by filing motions and objections, probably all dealing in areas unfamiliar to P, requiring responses which require much more research.

4/13/08    Exhbs A

Letter to D A G assigned this case.

From: Kenneth Abraham, DAG 1974 to 1979.
in mate 130840 and Plaintiff in this case.

Dear Sir or Madam,
Why represent these criminals wearing D.O.C.
uniforms?! Do the D.O.C., the State, and the Courts
a favor by doing the right thing!!
You have sworn to protect and defend the
Constitution and the laws, You can do so by prosecuting
the defendants. Your duty is not to these scoundrels, it is
to do JUSTICE. Department OF JUSTICE?
You could start by asking Bards to take a
simple polygraph exam. Questions might include:
Did Mr. Abraham curse and swear on 11/12/07?
Did  "   "  attack Lt. Smith with a pen on 11/12/07?
Did  "   "  state on 11/12 that he had bought pills from comissary?
Did  "   "  attack or attempt to strike anyone with
anything on 11/12/07?
Did anyone (officer Hannum?) grab Mr. Abraham and "wrestle
him to the ground" on 11/12/87?

They will refuse the exam. If they answer yes to
any of the above you will see their lies!!
You must know that a trial is designed to elicit the
Truth, and By God, it is just a matter of time before

I took that oath in 1974 & did so when you were I believe?

I make the truth known, if you do not seek it out
yourself. I will prove to you, and more importantly
to the jury, that these guys are lying, and they
must take you, the Court and the jury for FOOLS!
I was in your shoes for 5 years, tried 300+ cases.

    Interrogate the 4 named guards (Bryan, Smith, Hannum,
Toomey) separately, or offer them a polygraph. NO Way
they can pass!!

    You're going to save yourself a lot of work
and considerable embarrassment, and more importantly,
do JUSTICE.

Perhaps you've been there 20 years
and you're the Department's BEST litigator; you
cannot change the facts (or want to (should not))!

Respectfully,

Kenneth Abraham

G.S. Little could these fools have known
that I stopped swearing when my son
was born!! Which I also will prove!
(I might have "slipped" 2 or 3 times in 18 years!)
Compare this truth with their rediculous fabricated "Disciplinary Reports".
    Oh yeah, they look quite "official", as do the guards in their
uniforms!       Jurors are not stupid, and they will see
the TRUTH.

Having been blessed with a great practice for + 10 years, it's just
hard to believe and sad to see that the system has deteriorated
to the point that you represent people like these!

Memorandum p.28 — last page of memo in support af —

— I knew this was going to be an uphill fight (getting something done about the wildly lawless, repetitive criminal conduct of guards and managements — from Danberg on down-complete acquiescence in it), but the degree (slope) of this mountain is ridiculous! This is true because Justice Brennan did not realize the depth of understatement in these words when he wrote:

"Prisoners are persons whom most of us would rather not think about. Banished from everyday sight, they exist in a shadow world, that only dimly enters our awareness... When prisoners emerge from the shadows to press a Constitutional claim, they invoke no alien set of principles drawn from a distant culture. Rather, they speak the language of the charter upon which all of us rely to hold official power accountable. They ask us to acknowledge that power exercised in the shadows (I add against virtually helpless individuals) must be restrained at least as diligently as power that acts in the sunlight."

O Lone v. Estate of Shabazz, 482 US 342, 354-55, 107 S.Ct. 2400, 96 L. Ed 282 (1987),

Indeed, the problem is-no accountability. This Court is the only hope for Justice.

From: Kenneth Abraham (7)
Deputy Attorney General 74-79
Inmate 173040, Victor B-1
DCC 1181 Paddock Rd, Smyrna, DE (997?)

To: Agent in Charge

*Exhibit B*

FBI

Re: Pressing charges to have two D. O.C. guards arrested, tried and **convicted**. Assault and battery, violation of constitutional rights, conspiracy. The problem is so entrenched, maybe even RICO. And, once an investigation begins, probably obstruction of justice. Yes, I'm serious!

Greetings. Inasmuch as I am an inmate, below are four people who know me at least well enough to vouch for my veracity. Moreover, I am more than willing to take a polygraph exam concerning anything I have to say. The four are:

Myron Steele
Chief Justice – Supreme Court of Delaware
302-739-4214

Dick Wier
former Attorney General of Delaware
302-888-3222

Henry DuPont Ridgely
Justice- Supreme Court of Delaware
Hank at home: 302-697-1551

Charlie Oberly
former Attorney General of Delaware
302-576-2000

And Joe Biden, Mike Castle, Tom Carper

Were it not for the **EGREGIOUS, OUTRAGEOUS**, pattern or practice of what I have seen and experienced; the systemic problem, I would not go through what I am about to go· through. There are some **very** rotten apples in the barrel- a **disgrace** to law enforcement! The problem is serious and ongoing, no doubt because they have gotten away with it so many times. When the police prey upon the nearly helpless, who will bring them to justice? You can help do exactly that.

Having heard that guards at SVOP in Sussex County spray and beat inmates "for sport", I arranged to be sent to the "sanction pod" at SVOP in Georgetown. It worked; I was there from April 29 through May 14 of this year. I have kept detailed notes since my arrival in the institution on Jan 3, 07.

On May 9, I saw two guards approach an inmate from behind, as he was **walking away from them**, spray him with pepper spray, hit him, and slam him into the steel door. This attack was unprovoked and unjustified, and all too typical! The unusual thing about this incident is that the "mean spirited little men in a uniform" lost their cool before so many witnesses. About 20 others saw this and I can put you in touch with several. Such attacks usually are conducted out of sight of non DOC witnesses in a well orchestrated procedure.

On May 10, a Cpl. Mann and a Lt. Costello attacked me. With no (zero, zip, none, nada) justification or provocation. Indeed, my reaction to their verbal abuse (guards routinely call inmates "asshole" and "shithead" and try to provoke them) was so unusual that they were puzzled, called the Lieutenant, and then proceeded. While I was handcuffed, silent, and seated in a chair, they sprayed me with pepper spray, picked me up – snatched me out of the chair- threw me to the asphalt, kicked me in the head and deliberately injured my arm. After the attack, when I tried to wipe my eyes, Lt Costello shouted: "If you raise that arm again, I'll tear it off." To which I replied "nothing will surprise me." They then threatened to repeat this behavior every hour: they changed their minds when I let them know that I have cross examined thousands of lying witnesses and was looking forward to introduce them to a jury. Lt. Costello said: "you can't prove shit."

It is with **great** shame, remorse, and guilt that I tell you I am here for using cocaine and, worse, stealing money to get more poison. It is a powerfully pernicious poison. I shall answer candidly **any** questions.

This is the tip of a not melting iceberg. Please contact me to have these two arrested. Please.

Most Sincerely,

*[signature]*

Kenneth Abraham

Injry To head, arm, neck, back, leg, shoulder, KRA

copies to others

See U.S. Dist Ct Case # 07-593

I have some credible witnesses and ways to (for you) to reach them. One responsible person who can shed light on sngnificant D.C.C. and S.V.O.P. abuses, including those he experienced, is Charles Cardone, #098159.

Another person Kicked and beaten, while handcuffed, at S.C.C. in Georgetown, Sustaining two 2 broken ribs - I saw medical records records - is Curtis Collins now in SHU at DCC, KRA

11/28/07

Commissioner, DOC
From: Ken Ross, SHU 10CU
inmate 13948
Deputy Attorney General 74 to 79.

re: in the "hole" from 11/12 through 11/26 and Five(5) YEAR sentence based on OUTRAGEOUS, UNLAWFUL RETALIATION FOR CONTACTING The FBI, and more.

Dear Mr. Danberg,

IT is more than a little disappointing to see law enforcement officers of my home state, your employees, acting like this. Quite an understatement. One of 2 things is going on: ① You are part of the problem, or ② you have lost control of your Department. Either way, it is a sorry, serious, mess. You used to be A.G. I knew three five Attorneys General: Laird Stabler, Dickuren, and Charley Oberly.

As you know, despite your internal affairs "investigation," I was attacked by 2 of your guards in Georgetown on May 10th. It is what they do; "spray" people for sport and beat them, as most people who work at SVOP and all who have passed through it very well know.

Since May, despite submitting 4 separate times the correctly completed form listing phone #'s to be called using my "pin #," none has been returned to me "approved." So I have been able to make no phone calls since May, D.O.C. records will verify. When I returned to my cell from the infirmary on cd 13, and my property I taken by DOC guards in Victor B(dg.) was returned about 10 days later, the only item missing from all my papers was my copy of the Complaint I have filed in U.S. District Court. My property obviously was searched meticulously and this item removed. I have not yet received my property (taken again on 11/12) and nothing will surprise me. Perhaps I should have guessed the depth of the problem when I got my first "write-up" (hereinafter "wru") days after arrival. A FALSE report, and my complaints about the guard lying fell on completely deaf ears. "Grievance" and "appeal" ignored. More relatively little lies (compared to 11/12)(was) followed, followed by more "grievances" and "appeals," all ignored. So if you constantly get away with telling little lies, why not tell a WHOPPER when you feel like it?! [I'm going to show why not!]

(over)

Shortly before 11/12 a reliable inmate (rare but extant) said to me: "I seen the CO's fucking with your mail." On 11/10 I SAW in the CO's office of Victor Bldg an envelope I had mailed to David Ledford, Executive Editor of The News Journal - It was empty. It had contained copies of my 3 page typed letter to the FBI and other correspondence (Not summents to D.O.C.) relating observations of what I've seen, i.e. CMS (?) and the "Treatment programs". I think they also intercepted and threw away a pleading I had mailed to US District Court that weekend and other mail. I'll know soon enough. Next, ... if I did not know all too well what is happening I might think I was caught in an episode of "The Twilight Zone" - we come to 11/12.

On 11/12 I encountered some guards (?) bright idea of a good way to respond to what they have seen, probably even in collaboration with their buddies in Georgetown, named in the letter to FBI: A 100% FICTICIOUS, malicious account of an "assault on staff." (Give them a polygraph!) It began with "wW # 1035918, which I have never read or received. Replete with "loaded with lies, O'my, please have a copy of wW# 103578? Thank you. Then we have two more wW - # 1035912 - Twelve Sentences with 22 LIES, and #1035914, Six Sentences with 11 LIES. These guys must practice a lot to achieve such "jam packed with lies" results! The TRUTH is in the 'statement', 1 full page, which I wrote in then had about 45 minutes after the incident, (Lt. Porter told me the next morning he had read my statement but "I got to go on the write-ups". It has "disappeared." Where is my statement? At the "hearing" yesterday Lt. Larry Savage had not read and did not have a copy of it, and did not know how I can get a copy. May I please have a copy of my statement? Thank you. All 11/12 wW's are OUTRAGEOUS, CRIMINAL, MALICIOUS, FICTICIOUS, FALSE "B.S."!! When Smith ("S") started reading this full of lies and false accusations, I asked Bryan ("B") a few questions (i.e. what is this nonsense?") He said nothing, just kept the smirk on his face - That's when I knew - he had read my letter to the FBI. And I did say, calmly and with no profanity, to B: "You are quite a liar." And I did say to B and to S "if you guys are a DISGRACE to law enforcement." And both are both. And these lying thugs must take you, if (I) is not the case, for a FOOL to think they are going to get away with it! (Next page)

P3 to
Denberg.

Exhibit

I enjoyed five years as Deputy Attorney General and five years in private practice. Over 300 trials (of all sorts), cross-examined thousands of lying witnesses (mostly criminal - like these guards). They will Never get away with this. Never. Why don't you MAKE IT SIMPLE — give them a polygraph exam. They'll never pass a properly administered test (and they will never fool a jury - jurors aren't stupid) because they are lying!! I see, reading in "#12, they have now involved an off. Harmon who in fact said and did NOTHING during incident of 4/12! Just give him a lie doctor on "wrestling me to the floor" and watch their entire story crumble; and start to see the truth and the nature of your problem. Mr. Denberg, you used to be A.G., for God's sake!! Get these lying thugs under control!!

It is a sad day when Delaware law enforcement officers, your guards, refer to a Federal judge as "a powerless Fuck Head. That Fuck Head can't do shit", and "Ain't two little Cocksucker in a robe gonna tell us what to do. We do what we want in here". Indeed they do. And we have B's shared memorable remark: "FBI, huh? You don't Fuckin these, we stick together."

As a direct result of these intentional, malicious, unlawful lies (all of which they knew would happen):

① I was wrongly removed from Greentree, triggering the 5 year (5 YEAR) sentence which had been "suspended for completion of Green Tree." Enrolled on 9/28, I was actively participating, attending more "classes" than required, and the "head facilitator" (w.s.) had given me the materials and asked me to teach a class commencing the following week! Frustration, ventilation — anger...

② Thrown (literally) into the "hole" for 15 days — nothing but underwear, socks and toilet paper 24/7. I'm still in a "holding cell" in the SHU — near equivalent of "the hole". No T.V., requests for forms ignored, communication severely restricted — as B's intended.

③ All these lies are posted as fact on the D.O.C. computer system, grossly

Note their continuous arrogance
paralle/s their criminal conduct.

misleading everybody who reads them, including the sentencing judge or any judge who might modify a sentence.

(4) I am falsely portrayed as a "super troublemaker," classified as such, wearing orange.

(5) "Good Time" Taken away and 5 year sentence in the STU imposed (I must be in the STU protective custody, having been prosecutor 5 years)

(6) Cannot use law library, go to church, use library, find out from others what's really going on, communication extremely restricted.

The fact is that at all times, even when the situation (their conduct) was so OUTRAGEOUS that I did tell guards what they are - a liar - a disgrace - I did so with no profanity and never became "disruptive," "yelled" etc. Give Me a polygraph!! I'm betting 5 years I'll pass it - and your guards will fail. I could tell when Lt. Porter spoke to me in "the hole" that this is beginning to get the picture. Here's the picture: the metaphorical poop/a is about to "hit the fan" and splatter all over some DOC. uniforms, as God knows, it should. You should be the "splatterer," not the "splatteree."

Do the right thing. Read my statement if you can find it. Closely examine B, S, and Hannum separately, give them a polygraph exam. If (I) is not the case, you're not part of the problem, you'll get quite an eye-opener! [Steven's next footnotes]

(N1) I am mindful that I'm dealing with an institution which beat a person nearly to death and then said "He fell off his bunk" when your own doctors said such injuries could not possibly be sustained in such a fall!

(N2) All "ivus" are at least liberally sprinkled with (at least in my case) FALSE adjectives like "hostile, rude, belligerent, aggressive, disruptive, etc." Total BS, I just "Tell it like it is" — and WELL!

(N3) Far too frequently, taking a serious medical problem to crisis treated" with procrastination, prevarication, and perfectly preposterous poppycock! For example, Bill, a not atypical patient, He complained of a small tumor - a corn size + I ignored for months, + grew it until... They cut off his leg! 10 days prior Bill told me CMS told him he'd be "getting a new knee," From new knee to no knee!

next page

It seems that much of Delaware Officialdom is content to keep pushing people through these (2 of which I've experienced) so-called "Treatment programs" blind to reality. Or masking reality with naked proclamations of "success." It is convenient for the system. Looks good (superficially). Sounds good. Accomplishes nothing & the reason that you need hundreds of new beds is these "programs" are a huge failure — no surprise to anyone who knows what goes on. What goes on? In "Greentree" for example, inmates, with no qualifications or training (many with serious anti-social values, thinking and behaviors) (a) control daily life on the tier. When we slept, when we could move, shower, etc., & extortion, coercion, pure nonsense — imagine the result — you cannot. (b) teach all classes, and (c) even - oh yes" — determine which other inmates "graduate" or complete the program. The "professionals" have abrogated all responsibilities. The "Counselors" are in the building maybe 3 hours per week, doing administrative paperwork, reclassifying people, moving them in and out. There is no counseling going on. Can't prove this? Only with a few hundred witnesses who've passed through the "program" and a few honest AOC personnel.

Here's a copy of my letter to Judge Young shortly after a "class" on 11/1:

"Your Honor,

Just a note to let you know my progress in Greentree. My last class began with the "facilitator" (inmate teacher) saying: "OK, this morning we just gonna kick it 'bout the cop got shot in Philly.'

A lively discussion ensued, including the merits (desirability) of killing cops, when killing cops might be 'necessary', what uses might be made of the weapon stolen from the dead officer, etc. The class ended with the "facilitator" saying: "Fuck the cops, let's go eat!'"

Respectfully submitted,
RRA

(N5) I find it hard to believe that B&S concocted this scheme on their own. You have more than a couple of rotten apples in the barrel. I'm not paranoid, but I wasn't born yesterday. In fact, please give me

a real, thorough psychiatric exam by a well known, independent "experts" any day. And a polygraph. I'm 60, "clean" (no cocaine power) for a year, and just the getting warmed-up! Ask Hank Ridgely or Myron if you should underestimate me or ignore and disregard what I'm telling you. Hank has known me well for over 30 years.

NS, N4, N5 etc.

This is some of what your guards read (and the FBI letter) and OH BOY, they did not like that! Got to shut this guy up, punish him (maybe 5 years will slow him down), discredit him, intimidate him, cover our buddies wrongdoing!" Hence, the incident of 11/12/07.

God Bless our little great State of Delaware, and get the muck out of the system!

Very Sincerely

Ken Abraham

Do the right thing instead of trying to keep someone wrongly imprisoned for five years! KRA

Your guards say when they got angry: "Nobody cares. Nobody cares about you in here, nobody gives a shit about ya." That's part of what they count on in their misdeeds.

I believe somebody will care about this!

KRA

(2 pens, 1 pencil)

12/20/07 when property was returned  ± 11/30  all writing instruments, envelopes, and months (May through Sept.) of daily notes had been taken - gone!

STATEMENT written on 11/14/07 - 25 min + states of Verincident.

11/14/07 It is more than a little disappointing to see law enforcement officers of my home state acting this way. Quite an understatement.

I had 4 pills out on table to remember to take them, Bryan + Hanson come in for shakedown. Basked about pills and I told him 3 red were corodin and I had 3 more boxes in drawer from Doctor. 4th pill given by Nurse and I had not taken it because pain comes + goes, would take when pain recurs. I said nothing about allergy or commissary. Roommates Clark + Ken said maybe write up Bcause pills not in orig. container - so that's what I expected write up to be. Note (several cos had seen same pills (3,4,) thus arrayed in prev. days and said nothing). Called to office [?] and Lt starts reading "lying, disobeying order, etc, and I said "what's this nonsense? As answer I say "that's not right at all, what's this nonsense?" Bryan comes in from dayroom. I say what's this? No ans. I say "are you sure you're not mistaking our conversation for another one in another cell?" Smith says "Shut the fuck up and let me finish." Bryan only smirks - says nothing. That's when I knew. He had seen my FBI letter copy and other stuff - cost programs which I had sent to News Journal, I said to Bryan "you're quite a liar." "No profanity, yelling, disruptive etc, He says nothing, then they both exploded when I said "you'll never get away with this." Smith says "shut the fuck up." I said this is too funny. Both are a disgrace to law enforcement. Smith laughed. I say "you saw my letter to the FBI and you didn't like it." Bryan smirks again. Smith "But the fuck up, go to your cell." I start to walk saying I will introduce them to Fed Ct. They'll never get away with this. Smith says "hold it - takes my pen out of my pocket and says - cuff him." and call Code red." Bryan not cuff me + Bryan calls "Code red Code" Victor Bldg. Smith says "you tried to stab me." gesture, I say what? Disgrace to law enf + to this. I. you must be nuts to think you'll get away with this. I powerless Fuck Head. Deli "this is why God made Fed judges." Bryan "No little cocksucker in a Federal Fuck Head [scratched] can't do shit." Smith "storm Troopers, FBI hidin robe gonna tell us what to do - we don't want you here." Bryan "good even so they say shit if I... I don't think I will shut up ... you will never get [scratched]

"letter to Denberg" of 11/28/07.

Exhibit

I am here for using cocaine, and, worse, stealing money to buy more. Been sentenced and being punished. No argument with that. However, due solely to malicious lies by D.O.C guards I now face being — incarcerated until 2012, instead of 2008. These lies are retaliation for my efforts to contact the press and law enforcement authorities about criminal conduct by guards. OUTRAGEOUS, and compounded by the culture of cover-up. I will prove in any court of law, where the law and rules of evidence apply, everything I say, in a trial or hearing of ± 2 hours, the trier of facts will see the TRUTH.

On 5/10/07 I was physically attacked by guards at S.U.O.P in Georgetown without provocation or cause. IT is what they do there. The brutality at SVOP is an open secret and I have many witnesses. IT is widespread, systemic, inexcusable.

Guards here at DCC in Smyrna saw that OI was suing those at S.U.O.P, and (3) I was attempting to reach federal and state authorities and the press regarding the situation and other problems here. They stole legal documents and outgoing mail.

On or about 11/10/07 these guards in Victor building stole an outgoing piece of mail to the News Journal. This envelope contained a copy of my 11/7/07 letter to the F.B.I and correspondence describing other serious problems in this institution.

On 11/12/08 they retaliated. One glance at my "status sheet" in the D.O.C computer system tells the reader that I have a 5 year sentence, suspended for the completion of "Greentree program." I was in the program, doing better than fine (see "Denberg letter), on track to be released in late '08. But on 11/12/08 guards Bryan and Smith, probably in collusion with their buddies in Georgetown, concocted three totally FALSE ("write-ups" or "disciplinary reports")

of "assault on staff," & was, of course, removed never of the Greentree program, and triggered the balance of the 5 year sentence!! It also placed me here in SHU (solitary confinement) with other sanctions. As it now stands, I am to be here until the end of 2012! (or until I can get justice).

There is no recourse here - the "hearing officer" said that he was not interested in the truth, and Commissioner Danberg refuses to investigate, acknowledge, or solve the problems. The institution will not admit its wrongs.

Again, I have kept detailed notes since my arrival here on 1/5/07 when I refused probation and asked for treatment. I can prove what I am saying, including that guards here scorn the law, think they can break the law with impunity, and lie like crazy to cover up wrongdoing. It is a "culture of cover-up," ingrained.

While the "letter to Danberg" of 11/28/07 mentions many problems here, it is the outrageous retaliation which I deem most outrageous, and I am trying to get authorities to begin an investigation which will lead to the firing, arrest and conviction of those involved.

Please, somebody charge me with a crime for this "assault on staff"! It would be the quickest way to a courtroom to expose the truth!!!  XTRA

I ask YOU, after reviewing enclosed documents, to contact:

Ms. Rona J. Comisac
Assistant Attorney General
Special Litigation Section - Civil Rights
US. Department of Justice
950 Pennsylvania Ave, N.W. PHB
Washington D.C. 20530

Crimes and violations of 5th, 4th, 6th 8th and 14th Amendments clearly.

These guards need to be prosecuted!!! Organized pack of lying thugs!
I shall answer any questions with complete candor. A disgrace to
will take polygraph exam, etc.   XTRA.   Delaware!!

11/27/00

To: Col. Thomas F. MacLeish         From: Ken Abraham
Superintendent - Delaware State Police        173040-SHV-19-8144
P.O. Box 430                                            D.C.C. 1181 Paddock Rd.
Dover, DE 19903                                    Smyrna, DE 19977

Re: criminal conduct of law enforcement officials

Dear Sir,
    I contacted you as early as July, '07, and heard nothing.
    I am writing to you again to ask to press charges to have some criminals arrested. They're among the <u>worst</u> kind of criminals; they wear law enforcement uniforms!

    If you are the caliber of person and policeman of some Delaware State troopers I have had the privilege of working with in the past (John Bisbee, Bob Collison, Bruce Pearce, among others) you will <u>do</u> something.

    Thank you for your attention to this matter.
                                                Sincerely,

enclosures — 26 pages
copies to others.

                                            Kenneth Abraham

|||||

● letter to Castle        "BSE letter" 11/7
   SUMMARY of PROBLEM    × "D.O.C." write ups 11/12
   "Dahberg letter" of 11/28/07   × "Statement" 11/12
                                          "I am not SAFE" page.

KENNETH R. ABRAHAM
Kenneth

*Resume*

*E*

*Exhibit E*

**MARKETING/SALES**        Within two years of acquiring a dormant printing company I had hundreds of new local and national accounts including (nationally) Red Lobster, Burger King Corporation, Shoney's, Sea Escape, Atlanta Braves and other teams, Waste Management, National Plastics Council and more. By the end of the first year we had won the Business of the Year award from the Seminole County Chamber of Commerce. I created and marketed the "Recyclesourous" program, an award winning educational Funbook for children, which we produced for companies and communities nationwide.

During each of my four years as a business broker I was the firm's top producer, and I suggested and helped to create the Florida Better Business Brokers' Association..

In my law practice I pioneered (tasteful) legal advertising, and in timeshare sales I achieved a 12% closing ratio.

**MANAGEMENT/LEGAL**        My printing and publishing company grew from two to 23 employees within two years. Quality improved immensely. We started two related print businesses and a nationwide catalog business. As an attorney I managed my law firm, emphasizing criminal, domestic, personal injury and business litigation. I won over 300 jury trials and handled thousands of cases in all courts. As Deputy Attorney General I established a police education program.

**CIVIC/OTHER**        I have been active in United Way, Rotary International, Board of Realtors, Episcopal Church, Legal Aid, and the Delaware State Bar Association Ethics and Criminal Law committees. I enjoyed teaching business law and criminal law at local colleges. I won the American Jurisprudence Award for excellence in Contract Law.

*excellence #2 Job, 1989-2006 "DaddyBear"*

**EDUCATION**
The Dickinson School of Law – J.D. 1973
Carlisle, Pa.

Kenyon College B.A. 1969
Gambier, Oh.

The Peddie School- Honors 1965
Hightstown, N. J.

References available upon request.

*Myron T. Steele*
*Chief Justice*
*Supreme Court of Delaware*
*302-739-4214*

*Dave Poole*
*Dave Poole Marketing*
*Orlando, FL*
*407-699-0758*

*Henry duPont Ridgely*
*Justice*
*Supreme Court of Delaware*
*Home: Jo 26 97-1551*

**EMPLOYMENT**
Dave Poole Marketing 1996-now *(2006)*
Orlando, Fl.

Self employed 1992-now *(2006)*
Orlando, Fl.

Owner, Paragon Inc. 1988-1991
Longwood, Fl.

Business Investment Consultants
1984-88 Orlando, Fl.

Attorney at Law 1979-83
Dover, De.

Deputy Attorney General-Delaware
1974-79 Dover, De.

Law Clerk, Delaware Supreme Court
1973-74 Dover, De.

*Have not practiced since '83*

*Best attorney 39 larrys 9 years?*

4/2/08 To: Joseph "Beau" Biden III
Attorney General-State of Delaware
Carvel State Ofc. Bldg.
820 N. French St.
Wilmington, DE 19801

From: Ken Abraham, 173040
SHU 19 B-U-4, D.C.
1181 Paddock Rd.
Smyrna, DE 19977

re: Criminal Complaint

Dear Mr. Biden,

I know from experience the discomfort in having to investigate and proseote fellow law enforcement officers. I also know the critical value and benefits of doing so when necessary. The officers named are a DISGRACE to law enforcement and the people of Delaware, and all those officers who do their jobs properly are tainted by these few.

Some benefits, far more significant than redressing the personal wrongs done to me, include:
(A) Sending the message which this institution sorely needs to receive: "the law applies inside these walls!"
(B) Successful prosecution of the criminals wearing D.O.C. uniforms will no doubt deter others, hopefully put a dent in the "culture of cover up" and effect some change in the current D.O.C. attitude of absolutely no interest in the truth.
(C) The U.S. District Court for the District of Delaware is beseiged with burdensome complaints from inmates. Some no doubt are spurious; sadly for Delaware, too many have merit. Successful prosecution of matters addressed herein will reduce the necessity for such Federal actions.

(Over)

I am aware too of the "unpopularity" of "helping" inmates.
Justice Brandeis eloquently described the plight of abused
inmates by noting that prisoners "live in society's shadow"
with most not wanting to "get involved."

It is because inmates are so relative helpless that you
should administer justice. It is precisely because others
with the power to intervene and ensure justice have turned
their heads that the current problems persist.

With this letter, my Affidavit, and the other enclosures
I implore you to begin a genuine investigation.

Thank you for your consideration.

crimes: assault + battery, false reports (under 1245(3)(a))     Respectfully,
        false imprisonment, Hate crime 11Del C 1304(1),
in the opening of US Mail, Tokous Journal and retaliation
for lawsuit + correspondence. Numerous civil rights
violations                                            Ken Abraham

P.S. internal "grievance" process, which I have exhausted, is
     a wildly ridiculous joke - a farce. Were you here to witness it
you would agree!!
                                          KRA

Give Bryan + Smith a polygraph:
① Did Mr A curse + scuffle at all on 11/12?
② ... attempt to stab anyone + anything?
③ Did anyone "wrestle Mr A to the floor"?
     If they answer Yes to any you'll see their lies.

(Exhib H)

Affidavit

To: "Beau" Biden AG

I, Kenneth Abraham, on this 2nd day of April, 2008, do swear and affirm that every statement of fact in the following documents (attached and hereby incorporated as part of this Affidavit by reference) is true and correct, under penalty of perjury or other law:

① "Letter to F8S" of 11/2/07
② "Letter to Denberg" of 11/28/07
③ "Statement" of 11/15/07,
④ "Summary of Problem" of 1/20/08
⑤ Letter to Col. Maclesh of 1/27/08

Further, I am willing to answer any and all questions posed by the office of the Attorney General and am willing to take a polygraph exam in connection with this matters.

This Affidavit is submitted with my letter to Mr. Biden (Joseph "Beau" Biden, III) of 4/2/08 seeking a full investigation of these matters, consistent with his Oath of Office and 29 Del. C. §2504(4).

I, K. Abraham, swear and affirm that the above (and incorporated) information is true and correct and is made under penalty of perjury.

Dated: 4/2/08

Brian D. Engrem
Notary Public, State of Delaware
My Commission Expires June 14, 2008

SWORN TO AND SUBSCRIBED before me
this 2nd day of April, 2008,

Brian D Engrem
Title — Notary

Disciplinary# 1035914

**DCC Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 11/13/2007

# DISCIPLINARY REPORT

Disciplinary Type: Class1    Housing Unit: Bldg C    IR#: 1047421

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|------|-------------|------------|---------------------|------|------|
| 00173040 | Abraham, Kenneth R | DCC | Bldg.V Office | 11/12/2007 | 22:00 |

Violations: 1.06/200.203 Disorderly or Threatening Behavior, 2.05 Disrespect, 2.06/200.108 Failing to Obey an Order, 2.14 Unauthorized Communication

Witnesses:1. N/A                    2. N/A                    3. N/A

### Description of Alleged Violation(s)

On Above Date And Time Lieutenant Patrick Smith, Unit 13, Responded To V-Building To Perform A Hearing On I/M Abraham, Kenneth Sbi #00173040, For A Write Up That Writer, Sgt. Michael Bryan, Had Conducted On I/M Abraham During The Course Of The Hearing Lieutenant Smith Was Reading The Report To I/M Abraham, When I/M Abraham Began Yelling That This Was Bullshit, This Is Trumped Up Charges. I/M Abraham Then Looked At Writer And Stated That You Are A Disgrace To Law Enforcement, And A Lying Piece Of Shit Lieutenant Smith Advised I/M Abraham That He Needed To Calm Down And Let Lieutenant Smith Continue, At That Point I/M Abraham Began Stating That Sgt. Bryan Was A Lying Piece Of Shit And That I/M Abraham Would Get Sgt. Bryan And That I/M Abraham Would See Sgt. Bryan And Lieutenant Smith In Court As We Were A Disgrace To Law Enforcement At That Point Lieutenant Smith Ordered I/M Abraham To Return To The Tier, And I/M Abraham Again Stated That He Would Get Writer And Lieutenant Smith And That He Would Sue Us In Federal Court And That We Were Pieces Of Shit.

Reporting Officer: Bryan, Michael  (Booking/Receiving Room Officer)

### Immediate Action Taken

Immediate action taken by: Bryan, Michael  -Booking/Receiving Room Officer

A 404 Was Completed And Lieutenant Smith Was Notified

### Offender Disposition Details

Disposition: N/A                    Date:N/A          Time: N/A          Cell secured: YES/NO

Reason: N/A

Disposition Of Evidence: N/A

### Approval Information

Approved: [x]    Disapproved: [ ]    Approved By:Cessna, Christopher (Staff Lt./Lt)

Comments: N/A

### Shift Supervisor Details

Date Received: 11/13/2007          Time: 19:43          Received From: Cessna, Christopher

Shift Supervisor Determination:

[ ]    Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]    Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing.

Cessna, Christopher  (Staff Lt./Lt.)

---

I have received a copy of this notice on DATE: 11/13/07    TIME: 1945    and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

Preliminary Hearing
Officer:                LT. Cessna, Christopher          Offender: REFUSED TO SIGN
                                                                        Abraham, Kenneth R

Page 1 of 1

Disciplinary#
1035912

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 11/13/2007

# DISCIPLINARY REPORT

| Disciplinary Type: Class1 | Housing Unit: Bldg-C | IR#: 1047417 | | |
|---|---|---|---|---|
| **SBI#** | **Inmate Name** | **Inst. Name** | **Location Of Incident** | **Date** | **Time** |
| 00173040 | Abraham, Kenneth R | DCC | Bldg V Day Room | 11/12/2007 | 22:21 |

Violations: 1.02/200.201 Assault, 1.06/200.203 Disorderly or Threatening Behavior, 2.03/200.106 Creating a Health, Safety or Fire Hazard, 2.05 Disrespect

Witnesses:1. N/A      2. N/A      3. N/A

### Description of Alleged Violation(s)

On The Above Date And Time While Lt. Smith Was In V Building To Do A Preliminary Hearing On I/M Abraham Kenneth 0173040 For An Offense That Happened Earlier In The Shift, Inmate Abraham Became Disorderly And Began Calling Sgt. Bryan A Disgrace To Law Enforcement And A Lying Piece Of Shit. Lt. Smith Informed Inmate Abraham That The Hearing Was Over And that His Actions Constituted A Refusal To Sign. Inmate Abraham Continued To Be Disorderly. Lt. Smith Ordered Inmate Abraham to Return To His Tier, Inmate Abraham Continued His Dis Orderly Behavior Towards Sgt. Bryan. Lt. Smith Gave Inmate Abraham . Second Order To Return To His Tier, As Lt. Smith And C/O Hannum Were Escorting Inmate Abraham To The Tier Door Inmate braham Msde The Comment " I've Taken Many A Piece Of Shit Correctional Officer To Court, I'Ll See You In Court. Lt. Smith rformed Inmate Abraham That His Name Was Lt. Patrick Smith, At The Tier Door Inmate Abrahm Made The Comment" I'Ll Get ou. Inmate Abraham Then Pulled A Pen Out Of His Pocket And Lunged Toward Lt. Smith Attempting To Stab Lt. Smith, Lt. Smith Grabbed The Wrists Of Inmate Abraham To Prevent Himself From Being Stabbed, Officer Hannum Grabbed Inmate Abraham rom Behind, Lt. Smith And C/O Hannum Wrestled Inmate Abraham To The Floor, C/O Hannum Hand Cuffed Inmate Abraham, Lt mith Called A Code 1 In V Building, Sgt. Bryan And C/O Toomey Who Were Assigned To The Building Responded, Slt. Roland Wiley, Lt. Chris Cessna, C/O Lancaster, C/O Turner, C/O Mitchell, C/O Price,  And C/O Overmeyer Responded To The Code And Escorted Inmate Abraham Out Of V Building.

Reporting Officer: Smith, Patrick (Staff Lt./Lt)

### Immediate Action Taken

Immediate action taken by: Smith, Patrick  -Staff Lt./Lt

Hand Cuffed Inmate, Called Code 1in V Building

### Offender Disposition Details

Disposition: N/A      Date: N/A      Time: N/A      Cell secured? No

Reason: N/A

Disposition Of Evidence: N/A

### Approval Information

Approved: [x]    Disapproved: [ ]   Approved By: Cessna, Christopher  (Staff Lt./Lt)

Comments: N/A

### Shift Supervisor Details

Date Received: 11/13/2007      Time: 19:40      Received From: Cessna, Christopher

**Shift Supervisor Determination:**

[ ]  Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]  Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing.

Cessna, Christopher  (Staff Lt./Lt)

**Page 1 of 2**

| Disciplinary# | | DCC Delaware Correctional Center | | | Date: 11/27/2007 | |
|---|---|---|---|---|---|---|
| 1035905 | | Smyrna Landing Road | | | | |

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

*Huw. Didn't even have any funds for commissary too*

# DISCIPLINARY REPORT

**Disciplinary Type:** Class1          **Housing Unit** Bldg 18          **IR#:** 1047410

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|
| 00173040 | Abraham, Kenneth R | DCC | Bldg.V B Tier | 11/12/2007 | 19:00 |

**Violations:** 1.18/200.218 Possession of Dangerous Contraband, 2.01/200.105 Abuse of Privileges, 2.03/200.106 Creating a Health Safety or Fire Hazard, 2.06/200.108 Failing to Obey an Order, 2.10/200.212 Lying, 2.13/200.111 Possession of Non-Dangerous Contraband

**Witnesses:** 1. N/A          *out of 3000*    2. N/A   *Lies*    3. N/A

### Description of Alleged Violation(s)

On Above Date And Time Writer, Sgt. Michael Bryan, Conducted A Shakedown On B-Tier Cell #1. Upon Checking The Area Of The Single Bunk, Writer Observed Four Pills Laying On The Table, Located At The Foot Of The Single Bunk. Three Pills Were Oblong And Red In Color, One Pill Was A Small Round, And White In Color. Writer Made Contact With I/M Kenneth Abraham, Sbi # 00173040, Which Is Assigned To Cell #1 Single Bunk. I/M Abraham Stated That The Three Oblong Pills, Red In Color, Are Allergy Pills That He Had Purchased From The Commissary. The Small Round White Pill Is A Pain Killer That Is Administered By The Nurse. I/M Abraham Stated That He Only Takes The Pill When Needed. Writer Advised I/M Abraham That He Was Receiving A Write Up For The Three Oblong Red Pills For Same Not Being In The Proper Container, And For The Small Round White Pill For Not Taken Same When Administered By The Nurse. Writer Confiscated The Four Pills And Completed A 537 On Same. Write Also Made Contact With Lieutenant Patrick Smith And Made Same Aware Of The Infraction.

**Reporting Officer:** Bryan, Michael  (Booking/Receiving Room Officer)

### Immediate Action Taken

**Immediate action taken by:** Bryan, Michael -Booking/Receiving Room Officer

Pills Were Confiscated A 537 From Was Completed, A 404 Was Completed, I/M Abraham Was Made Aware Of The Write Up. Writer Contacted Lieutenant Smith And Made Same Aware Of The Infraction.

### Offender Disposition Details

**Disposition:** N/A          **Date:** N/A          **Time:** N/A          **Cell secured?** No

**Reason:** N/A

**Disposition Of Evidence:** A 537 From Was Completed And Fowarded To The Shift Commander Along With The 404

### Approval Information

**Approved:** [x]    **Disapproved:** [ ]    **Approved By:** Smith, Patrick (Staff Lt./Lt)

**Comments:** N/A

### Shift Supervisor Details

**Date Received:** 11/12/2007          **Time:** 21:16          **Received From:** ,_

**Shift Supervisor Determination:**

[ ]    Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]    Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing.

*Of course you did going on!!*
*You can't admit what's going on!*

Smith, Patrick  (Staff Lt./Lt)

*Learned after inj700 when property returned no his writing, instruments and notes.*

*Lies, lies and more lies. There is no interest in the truth in here. the amusement, the "hearing" on 12/2 that he had interest in the truth!! to my utter utter...*

Date: **10/19/2007**

Disciplinary #
1035045

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

# DISCIPLINARY REPORT

| Disciplinary type, Class: | | Housing Unit, Bldg: | | R#: 104392 | |
|---|---|---|---|---|---|
| SBI# | Inmate Name: | Inst. Name: | Location Of Incident: | Date: | Time: |
| 00173040 | Abraham, Kenneth R | DCC | Others | 09/23/2007 | 13:00 |

Violations: 1.29 Refusal to Participate in Classified Treatment Programs

Witnesses: 1. Thompson, Diana     2. Ingram, Norman     3. N/A

### Description Of Allege Violation(s)

On 09/26/2007 Date At Approximately 1300 Hrs, I/M Abraham Met With This Reporter To Discuss Treatment Goals And Objectives. He Appeared To Be Guarded When Engaged. He Repeatedly Stated, That He Requested The Judge To Order Him To Treatment And He Is Willing To Do Whatever It Takes To Stay Clean. Based On This Reporter Initial Assessment, Time Remaining On I/M Abraham Sentence, And His Disciplinary History While At Level 4 Crest Work Release Long-Term Greentree Is The Recommendation For This Client. I/M Abraham Immediately Became Abrasive Demanding An Accelerated Contract. This Reporter Explained To I/M Abraham Her Reasoning For This Decision. With An Escalated Tone He Stated, He Is Not Going To Do The Program If He Is Not Given An Accelerated Contract And Demanded To Be Classified Back To The Shu, And Stormed Out Of The Office.

Reporting Officer: Thompson, Diana (L5 Correctional Counselor)

### Immediate Action Taken

Immediate action taken by: Thompson, Diana -L5 Correctional Counselor

Informed Security Personal, Supervisor, And Program Coordinator Of Client Refusal To Particpate In A Classified Treatment Program.

### Offender Disposition Details

Disposition: N/A          Date: N/A          Time: N/A          Cell secured: No

Reason: N/A

Disposition Of Evidence: N/A

### Approval Information

Approved: [x]    Disapproved: [ ]    Approved By: Salas, John (Staff Lt/Lt)

Comments: N/A

### Shift Supervisor Details

Date Received: 10/15/2007          Time: 15:54          Received From: _____

Shift Supervisor Determination:

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]   Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing.

Salas, John (Staff Lt/Lt)

I have received a copy of this notice on DATE: _____   TIME: _____ and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

**Preliminary Hearing**
**Officer:** _____     **Offender:** _____
Salas, John                          Abraham, Kenneth R

Page 1 of 1

Response to request to work.

Exhib M

# DELAWARE CORRECTIONAL CENTER

TO: KENNETH ABRAHAM      SBI# 00173040    V-BLDG B1

FROM: COUNSELOR D. THOMPSON, BSW

SUBJECT: JOB REQUEST

DATE: 10/17/2007

CC: MASTER COUNSELOR D. SPENCE, GREENTREE CORDINATOR

As per your records it is recommended that you only remain program active at this time. Based on this reporter's initial assessment and your extensive write-up history at level 4 in the Crest program, you will not be considered for a job at this time.

9/20

Who is she kidding??
The first words out of her mouth were, "Bein you got 5 years suspended for the program, I'm putting you in it for 18 mos."
No discussion of prior treatment
No mental health evaluation
No assessment of need.
No testing of understand of addiction issues, treatment, or problems.

√ 90% of which is totally false!

√ No job. No chance to begin restitution.

Punished again by DOC falsehoods,
This is cruel and unusual punishment.

"Only remain program active"
does she not know that, from
5:00 AM to 10:00 PM every day is at least
15 hours of dead time. No "programming" going on whatsoever

These falsehoods cost me one year at least on 9/23/?

3    KRA

"Counselor" does
No (zero, none) counseling.

| DR# | | DCC **Delaware Correctional Center** | Date: **12/14/2007** |
|---|---|---|---|
| **1035912** | | **Smyrna Landing Road** | |

DCC **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA, DE, 19977**
Phone No. 302-653-9261

**Inmate** : Abraham, Kenneth R                                  **SBI#:**00173040     **Type:**Class 1

**Institution:**DCC Delaware Correctional Center          **Hearing Date:** 11/27/2007     **Time:** 10:21

## MEMORANDUM

**To** : Abraham, Kenneth R

**From** : Chief, Bureau of Prisons

**RE** : APPEAL DECISION

### 1. Isolated Confinement

Your appeal                         [ ]   Accepted     [X]   Denied

The decision of hearing          [X]   Affirmed      [ ]   Reversed   [ ]   Remanded for further proceedings

The sanction imposed by hearing officer will  [X]   Remain as imposed by the Hearing Officer [ ]   Reduced

The basis of this decision is as follows :

A review of your lengthy appeal raises numerous issues and allegations. However, there is only one brief reference to this incident, and it was merely a claim against staff. You have not provided any information to warrant a change in the decision. However, the guilty finding on 2.03 is reversed, that violation is not supported by the report. No other changes are warranted.

**This report has been reviewed by Rendina, Anthony J**

Date Reviewed **12/14/2007**

2/5/08   (Exhibit O)

To: Warden Perry Phelps     From: Kenneth Abraham
   D.C.C.                        173040 SHU 19 D-v-4

**RECEIVED**

FEB 2 2 2008

**DCC Warden's Office**

Per incident of 11/12/07.

   Dear Sir,

      I submitted, months ago 2 grievances and a
note to you which have been completely ignored,
      I write again - Please consider this an
Appeal or further Grievance concerning the OUTRAGEOUS
conduct of your employees, Smith and Bryan,

      Enclosed is my "Statement" of 11/12 and ② my
11/28/07 "letter to Danberg ⊕ (the truth!!) They accurately
describe the situation. Also enclosed is "FSB letter of 11/17,
as Danberg letter refers to it,
      So, I ask you to review these, (submit your
lying thug employees to a polygraph exam!) and take
action appropriate to correct ———— the injustice,
including firing these two guards.

                              Most Sincerely,

copies   (over)              K.M.A.

Note: The enclosed Statement of 1/12 is reconstructed immediately after I got out of "the hole," where I discovered I did not have a copy of the original. LT. Porter read the original one.

If you have or can locate the original "Statement" you will see it corresponds nearly verbatim to the one enclosed.

KRA

P.S. I had the privilege (oops) of working once with Warden Pelman, who did the right thing in a sticky situation many years ago. If you're in touch, give him my regards. KRA

Or, perhaps you too are part of the problem. I recall Bryan's arrogant remark: "FBI Huh, you don't fuck with us. We stick together." They either ① Know that you condone their conduct, or ② they ~~Am I tempted to add "This cocky fool will~~ must think you a fool. ~~got what's coming to him." you bet I am.~~ These guys, Sin that Bryan, are a DISGRACE to law enforcement and to the hundreds of DOC employees who come to work and simply do their jobs. When I filed a grievance asking for a copy of my statement of 1/12 I received a note back saying "Records indicate you received it on 1/14", more BS. Records indicate plenty which is FALSE.



**STATE OF DELAWARE**
**DEPARTMENT OF CORRECTION**
**DELAWARE CORRECTIONAL CENTER**
1181 Paddock Road
SMYRNA, DELAWARE 19977

## MEMORANDUM

TO:     Abraham, Kenneth #173040 / SHU 19 BU 4

FROM:   Capt. Michael J. McCreanor
        Office of Warden Phelps

DATE:   March 31, 2008

RE:     Letter dated February 15, 2008

The matter you wrote about has been investigated. It is clear you letter was inspired by the disciplinary action you received from Sgt. Bryan and Lt. Smith on November 12, 2007. Medications dispensed by the nurse are to be immediately taken, not saved for a later time. Housing rules clearly state items purchased at the Commissary are to be kept in their original container. You admit in your letter that you knowingly violated this rule on more than one occasion. The other officers were remiss in their duties by not correcting your behavior.

Your complaint about the restricted movement and privileges in the SHU is without merit. SHU is Maximum Security. Movement is restricted and privileges diminished because of behavior. However, you still have access to the Library, Law Library, newspapers and phone calls, but not with the frequency as the inmates in medium and minimum security.

I can find no justification to grant your request for staff to be given a polygraph.

CAPT. MICHAEL J. MC CREANOR

| DR# |
| --- |
| 1035912 |

*(Exhibit O)* [handwritten, circled]

19 [handwritten]

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: **12/29/2007**

## DISCIPLINARY HEARING DECISION

| Inmate Abraham, Kenneth R. | SBI# 00173040 Type Class |
| --- | --- |
| Institution DCC Delaware Correctional Center | Hearing Date 11/27/2007  Time 10:21 |

**Inmate Present:** Yes    **Reason(If No):** N/A

**Violation:** , 1.02/200.201 Assault, 1.06/200.203 Disorderly or Threatening Behavior, 2.03/200.106 Creating a Health, Safety or Fire Hazard, 2.05 Disrespect

**Inmate PLEA:** Not Guilty

**Inmate Statement:** Never happened. They took pen out of my pocket after I was handcuffed.

**Decision :** Guilty  *Surprise, Surprise.  Also NOT True* [handwritten]

**Rational :** Per report inmate found guilty of all charges. Inmate didn't want to confront accuser. Sanctioned to 15 days isolation already served.

**Sanctions:** N/A    *And 2 years in SHU!! And, they hope, 5 years in prison.* [handwritten]

### HEARING OFFICER'S SIGNATURE

Savage, Larry

I understand that I may appeal the decision of a Class II Hearing to the Class I Hearing Officer.I may appeal the decision of a Class I Hearing to the facility administrator.I also understand that I have 72 hours to submit my notice of appeal in writing to the Class I Hearing Officer if I am appealing a Class II Hearing decision or the Warden if I am appealing a Class I Hearing decision.

**I [X]  DO    [ ]   DO NOT INTEND TO APPEAL**

_____
**INMATE's SIGNATURE**

### ORDER TO IMPLEMENT SANCTIONS

[X] Inmate does not wish to appeal    [ ] Appeal has been denied by Commissioner or Designate

[ ] Sanctions have been modified    [ ] Time Limit(72 Hours since hearing) for appeal has expired

It is here by ordered to implement the sanctions:

| Sanctions | Start Date | Days | End Date |
| --- | --- | --- | --- |
| 1. Isolated Confinement |  | 15 |  |

*These "Disc. Reports" look oh! so official, yet they are complete BS! Loaded with lies!* [handwritten]

*More BS* [handwritten]

*rec'd 1/5/08* [handwritten]

*As I wrote to Fed Ct, there is nothing unjust about the guilty, being sentence here, imprisoned, for what they have done in accordance with a judge's sentence. There is something grossly unjust about being wrongly imprisoned due to this outrageous, totally FALSE, BS. by the custodians, retaliating, trying to cover up crimes!!* [handwritten]

*Dear God, please, just get me before 12 ordinary people, Me and the lying* [handwritten]

1/26/08   Exact copy — Law library refused photocopy.

To: Todd Kramer    (Exhib A.)    From: Ken Abraham
SHU19 Counselor                    173040 SHU19 B-U4
Office of Treatment Services
DCC,

Mr Kramer,
        Despite several requests including one previous
to you, I have never received the details or been
informed of the consequences (penalties) of the
"write-ups" I received on 1/12/08. (which, by the way
are 100% FALSE!!)
        I need to know, for the lawsuit I'll be filing
in February, what are all of the sanctions, punishments,
consequences, loss of privileges, etc, and for what
length of time. All I know is I'm in isolation wearing orange.
        If you do not have this information, where can
I get it? I have written to counselor Aiello, you,
Lt. Porter, in "classification", without response.

        Thank you.                    Sincerely,

                                        K. ABM

Also — in your note of 1/16
you mentioned "PC" — will you
        please explain that?
                        Thank you.
copy ✓                      KRA

2/3 - He says he'll let
me know.

BLDG V B-1

**Offender Status Sheet**

Date: 10/10/2007

| | | | | | |
|---|---|---|---|---|---|
| SBI #: | 00173040 | Name: KENNETH R ABRAHAM | | Sex: M | |
| Location(s): DCC | | Level(s): 5 | Race: WHITE | DOB: 04/24/1947 | Sex Offender: [] |
| AKA: | KENNETH ABRAHAM | | | | |
| Offender Type: | Sentenced | | Officer(s): | | |

**Level: 5**

| Start Date: 05/16/2007 | MED: 05/15/2012 | STRD: 11/29/2011 | ADJ: 11/29/2011 | PED: | Statutory Days Earned: 168.00 |
|---|---|---|---|---|---|

| CASE#/Court/Type | CRA#/Judge | Charge Desc/Sen Type/Sentence Date | Status/Eff Date | Length Y M D | Start Dt | MED | STRD | Adj Date | CR Wk |
|---|---|---|---|---|---|---|---|---|---|
| 0705004852 | IK07052026 | THEFT $1000 OR> | Current | 5 0 0 | 05/16/2007 | 05/15/2012 | 11/29/2011 | 11/29/2011 | |
| U8 | Robert B Young | STANDARD 09/19/2007 05/16/2007 | | | | | | | |

**Special Conditions:**

| CRA# | Level | Code | Condition Description | Condition Comments |
|---|---|---|---|---|
| IK07052026 | 5 | CRT1 | Other Conditions: | SENTENCED TO 5 YEARS AT LEVEL 5 GREENTREE. UPON SUCCESSFUL COMPLETION OF LEVEL 5 GREENTREE BALANCE OF SENTENCE IS SUSPENDED FOR 18 MONTHS AT LEVEL 3. DEFENDANT SHALL REMAIN IN PROTECTIVE CUSTODY UNTIL PLACEMENT IN THE GREENTREE PROGRAM. MENTAL HEALTH EVALUATION SHALL BE PERFORMED. STILL HAS LEVEL 4 TO FINISH ON CASE NUMBER 0605019004. JC |

Feb. 25, 2008



Ken Abraham:

(1) File a civil rights complaint under 42 USCA 1983. Make sure you exhaust institutional remedies (grievance procedure). Stress in the complaint the "retaliation for exercising your constitutional rights." Specifically, your free speech rights to contact the media and your access to the courts right to file civil actions. The case law is mixed, but start your research with: Booth v. King, 346 F. Supp. 2d 751 (E.D. Pa 2004); Johnson v Litscher, 260 F.3d 826 (7th Cir. 2001); Misenar v. McKinna, 210 F.3d 390 (10th Cir 2000); 175 F. 3d 378 (6th Cir. 1999); Frazier v. Dubois, 922 F.2d 560 (10th Cir. 1990); 929 F.2d 419 (8th Cir. 1991); Rauser v. Horn, 241 F3d 330 (3rd Cir. 2001); and Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001).

Must be joking!?

(2) I was not able to find any case, statute or rule the states that one cannot libel or slander a convicted felon. See 10 Del. C. § 3919 for general defenses in civil libel actions. Also see 10 § 4001 — § 4005 for limitations on civil liability on state tort claims.

The cases and statutes listed above are available to you from the SHU law library.

Sincerely,

Lawrence Hirschman