## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH R. ABRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 08-311-SLR |
| | ) |
| COMMISSIONER CARL DANBERG, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

Kenneth R. Abraham. James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Catherine C. Damavandi, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

## MEMORANDUM OPINION

Dated: September 19, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Kenneth R. Abraham ("plaintiff") is an inmate incarcerated at the James T. Vaughn Correctional Center, Smyrna, Delaware, who proceeds pro se and has been granted leave to proceed in forma pauperis. He filed this lawsuit pursuant to 42 U.S.C. § 1983 on May 23, 2008 and has since amended the complaint. (D.I. 2, 6, 97, 117, 220) Presently before the court is a motion for summary judgment filed by defendants Commissioner Carl Danberg ("Danberg"), Warden Perry Phelps ("Phelps"), Michael Bryan ("Bryan"), Patrick Smith ("Smith"), and Larry Savage ("Savage") (collectively "defendants"), plaintiff's opposition, and defendants' reply.[1]  (D.I. 211, 253, 258)  Plaintiff recently filed a motion to stay the proceedings and request for counsel, opposed by defendants.[2]  (D.I. 252)  The court has jurisdiction pursuant to 28 U.S.C. § 1331.  For the following reasons, the court will deny as moot plaintiff's motion to stay and request for counsel and will grant defendants' motion for summary judgment.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Defendants filed their motion for summary judgment on February 28, 2011. (D.I. 211)  Following numerous motions filed by plaintiff to extend the time to respond to the motion for summary judgment, the court entered a final deadline of August 26, 2011 for plaintiff to respond. (D.I. 248)  Plaintiff timely filed his response.[3]  (D.I. 253)

---

[1]The Delaware Department of Correction ("DOC") was dismissed as a defendant on August 1, 2008. (See D.I. 9)

[2]The title of plaintiff's pleading is misleading. He actually seeks to reopen discovery. (See D.I. 252)

[3]Plaintiff argues that numerous issues have been decided by the court. Certain issues were raised in motions to dismiss and by defendants in their response to

Plaintiff alleges violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and raises supplemental State claims of false imprisonment and libel.[4] In September 2007, plaintiff was sentenced to serve a five year sentence at Level 5, suspended upon completion of the Greentree Program.[5] Following an alleged attack by two prison guards, plaintiff filed a lawsuit in this court in September 2007, *Abraham v. Costello*, Civ. No. 07-593-SLR (D. Del.). (D.I. 2, ¶¶ 1-7) The only defendant common to Civ. No. 07-593-SLR and the instant case is the DOC.

The complaint in *Abraham v. Costello* was entered on the court docket on September 26, 2007. (Civ. No. 07-593, D.I. 1) Plaintiff was taken to outside medical for a procedure between October 15, 2007 and October 18, 2007 and, when he returned to his cell, he found missing the complaint that he had filed in Civ. No. 07-593-SLR. Plaintiff wrote to the court and others about the missing pleading.[6] (D.I. 253, pl.'s aff. ¶¶

---

plaintiff's motion for summary judgment. The court, however, has made no dispositive rulings on issues raised in the context of a motion for summary judgment. (*See* D.I. 174, 175, 183)

[4]The First, Fourth, and Fourteenth Amendment violations allege the taking of a letter plaintiff had written to the News Journal, writing instruments, outgoing mail, and a copy of his complaint in Civ. No. 07-593-SLR. Plaintiff alleges denial of his right to due process, violations of the First and Eighth Amendments, retaliation, and libel as a result of alleged false disciplinary reports, a resultant hearing, and the effect the disciplinary rulings had upon his sentence.

[5]The Greentree Program is the VCC's residential drug and alcohol treatment program. *Eaton v. Danberg*, 545 F. Supp. 2d 396, 398 n.1 (D. Del. 2008).

[6]The complaint in *Abraham v. Costello* was screened on December 4, 2007 but, because plaintiff appealed the screening order, the service packet was not sent to the United States Marshals Service until April 8, 2008. (Civ. No. 07-593-SLR, D.I. 12, 48)

24, 25; Civ. No. 07-593-SLR, D.I. 8)

Bryan called plaintiff to his office between October 5, 2007 and November 7, 2007, and told plaintiff to leave letters for mailing open with the "pay to" slip sticking out of the envelope. All "pay to's" require the signature of an officer before being processed by the mail room. According to plaintiff, the "pay to" slips required for *Abraham v. Costello,* Civ. No. 07-593-SLR, passed through Bryan's office between September 28, 2011 and November 12, 2007. Plaintiff disregarded Bryan's instructions and sealed his envelopes.[7] (D.I. 253, pl.'s aff. ¶¶ 25, 29)

Plaintiff wrote to the FBI on November 7, 2007 in an attempt to have guards, who allegedly assaulted him, arrested for their crimes. From November 7, 2007 through November 10, 2007, plaintiff also wrote to the News Journal, the United States Department of Justice, several attorneys, the Attorney General of the State of Delaware, the Delaware State Police, and others regarding problems at the VCC. The letters specifically mentioned plaintiff's previously filed lawsuit, Civ. No. 07-593-SLR.[8] On or about November 7, 2007, plaintiff saw the empty envelope of the letter he had written to the News Journal in the trash can in the correctional officers' ("C/O") office.[9] (D.I. 2, ¶¶

---

[7]The court received plaintiff's signed authorization form for Civ. No. 07-593-SLR on October 11, 2007. (*See* Civ. No. 07-593-SLR, D.I. 6)

[8]Plaintiff's affidavit contains hearsay statements that two unnamed correctional officers told plaintiff that Smith and Bryan scrutinized his legal mail and correspondence to the FBI and government officials, that they intercepted the letter to the News Journal, and read and took the correspondence. As discussed in paragraph IV.A., the court does not consider the hearsay statements in plaintiff's affidavit. (D.I. 253, pl.'s aff. ¶ 4)

[9]Plaintiff's affidavit contains a hearsay statement that on or about November 8 or 9, 2007, an unidentified inmate told plaintiff that he had observed the guards "f--king with [his] mail." (D.I. 253, pl.'s aff. ¶ 30)

3

9-16, exs. B, E, G, H; D.I. 253, pl.'s aff. ¶¶ 26, 27, 31, 34, 38)

On November 12, 2007, Bryan entered plaintiff's cell to conduct a shakedown. Bryan discovered medication outside its proper container as well as medication administered by a nurse that plaintiff had not taken. Plaintiff received several disciplinary infractions from Bryan who made Smith aware of the infractions. That night, plaintiff was called into the C/O's office for a hearing with Bryan and Smith as a result of the items discovered during the shakedown. Words were exchanged and Bryan and Smith led plaintiff from the office. Plaintiff was cuffed from behind. Plaintiff alleges that Smith took a pen from plaintiff's pocket and then accused plaintiff of trying to stab him with the pen. Both Bryan and Smith prepared disciplinary reports. Bryan's report does not mention the attempted stabbing incident, but Smith's does. According to plaintiff, he did not cuss or swear, assault or attempt to assault, or become disorderly in any way. Also according to plaintiff, it was at this time that he realized Bryan had seen his letter to the FBI complaining about correctional officers. Upon receipt of the disciplinary reports for assault, plaintiff was taken to pre-hearing detention in isolation where he remained for fifteen days. At the same time he was immediately removed from the Greentree Program. (D.I. 2, ¶ 17, 19, 21-24, 28-31, exs. I, J, K; D.I. 213, exs. A, B, G; D.I. 253, pl.'s aff. ¶¶ 7, 11, 17, 23)

Plaintiff had participated in the Greentree Program for about six weeks, from September 28, 2007 to November 12, 2007, and had been told by the head facilitator that he would complete the program within one year, by December 2008. In addition, plaintiff had been asked to teach an upcoming anger management class. (D.I. 253, pl.'s aff. ¶¶ 22, 23)

4

Plaintiff alleges that his sentence is available for viewing by anyone who checks the DOC computer system, including Bryan and Smith. He alleges that all guards who work in the Victor Building, where plaintiff was housed, knew that most inmates in the Greentree Program are released early upon completion of the program.[10] Bryan worked in the Victor Building "nearly every day" from October 1, 2011 to November 12, 2007. According to plaintiff, his status sheet clearly indicates that he received a sentence of "five years suspended upon completion of Greentree Program." (D.I. 2; D.I. 253, pl.'s aff. ¶¶ 19, 25)

According to defendants, during the relevant time period Bryan, Smith, and Savage did not know why plaintiff was incarcerated. Nor did they know the length of plaintiff's sentence or the details of his sentencing history. According to Bryan, he did not view or access plaintiff's sentence information either before, or after, issuing him disciplinary violations. Similarly, according to Smith, he has never viewed or accessed plaintiff's sentence information. Finally, according to Savage, he did not view or access plaintiff's sentence information during the relevant time period. (D.I. 213, exs. D, G)

As a result of the November 12, 2007 incidents, plaintiff was charged with possession of dangerous and non-dangerous contraband, abuse of privileges, lying, disorderly or threatening behavior, disrespect, failing to obey an order, unauthorized communication, assault, and creating a health, safety or fire hazard. A disciplinary

[10]Plaintiff's affidavit states that he saw two unidentified correctional officers some eight months after (approximately July 2008) he was falsely charged with assault on staff on November 12, 2007. The unidentified correctional officers told him that Smith and Bryan had accessed his status sheet on the computer and discussed removing him from the Greentree Program in order to "shut him up" and to trigger his five year sentence. (D.I. 253, pl.'s aff. ¶4)

hearing, held on November 27, 2007, was conducted by Savage who, according to plaintiff, stated that he was required to go by the write-ups. Plaintiff was found guilty of all charges and sanctioned to fifteen days in isolation which he had already served. Plaintiff appealed and the guilty finding stood with the exception of the charge of creating a health, safety or fire hazard which was reversed.[11]  (D.I. 213, exs. A, B, G)

On the same date as the disciplinary hearing, plaintiff submitted a grievance complaining that, on November 12, 2007, "officers made up felicitous disciplinary reports" about him.  Plaintiff requested a copy of a statement he had prepared on November 12, 2007 and a copy of the related disciplinary report. The grievance was given a "non grievable" status and returned because records indicated copies had been given to plaintiff. On November 28, 2007, plaintiff wrote to Danberg regarding the events of November 12, 2007 and the hearing before Savage. (D.I. 2, ¶¶ 46, 55, exs. I, J, K, N, O; D.I. 97, 117; D.I. 213, exs. A, B; D.I. 129; D.I. 253, pl.'s aff. ¶¶ 8, 36)

Lise Merson ("Merson") reviewed plaintiff's grievance records and states that his grievances were not accepted because they contained vulgar or abusive language and a disrespectful tone towards staff, they were not resubmitted without abusive language and, therefore, plaintiff's grievances were not processed.[12]  According to plaintiff, the

---

[11]The events of November 12, 2007 were investigated by correctional personnel following a letter written by plaintiff on February 15, 2008.  (D.I. 213, ex. I)

[12]The April 12, 2009 grievance attached to Merson's affidavit is not relevant to the issues raised in the complaint.  In addition, Merson states that she reviewed grievances found at D.I. 103. None of the grievances attached as exhibits to D.I. 103 were for acts committed during the relevant time period.

6

grievances did not contain vulgar or abusive language and were not returned for said reasons. (D.I. 213, ex. C; D.I. 253, pl.'s aff. ¶ 15)

Upon release from isolation, plaintiff was transferred to the SHU where he remained for over three years.[13] According to Savage, plaintiff's removal from the Greentree Program occurred following the assault on staff. Plaintiff's classification, including removal from the Greentree Program, was determined by the classification committee. When an inmate's classification is changed, he has the right to appeal the reclassification. Savage, who presided over plaintiff's November 2007 disciplinary hearing, had no control over plaintiff's classification in 2007. However, in 2008 Savage became a member of the Multi-Disciplinary Team and assisted in the classification process. (D.I. 213, ex. G; D.I. 253, pl.'s aff. ¶ 23)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14]  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Material facts are those "that

---

[13]In November 2010, plaintiff was classified to the wait list for the Greentree Program. (D.I. 213, ex. G)

[14]Rule 56 was revised by amendment effective December 1, 2010. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

7

could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c) (1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it

8

has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

Defendants move for summary judgment on the grounds that: (1) the claims regarding wrongful removal from the Greentree Program must be dismissed because plaintiff did not meet the requirements of *Heck v. Humphrey*; (2) plaintiff has no entitlement to placement in the Greentree Program; (3) plaintiff cannot establish that any of the defendants were aware of his sentence or were in control of his placement in the Greentree Program; (4) the allegations against Danberg and Phelps are supervisory in nature and insufficient to maintain a 42 U.S.C. § 1983 claim; (5) plaintiff failed to exhaust his administrative remedies; and (6) all defendants have qualified immunity.

## IV. DISCUSSION

### A. Plaintiff's Affidavit

Defendants argue that plaintiff's affidavit, filed in opposition to their motion for summary judgment, contains hearsay statements, unidentified witnesses, and conjecture about the knowledge and mental state of defendants and is insufficient to overcome summary judgment. They note that, during discovery, plaintiff had ample opportunity to locate witnesses who could corroborate his testimony as he was provided with a list of all officers who worked in the Victor Building on November 12, 2007. In sum, they contend that plaintiff failed to come forward with any admissible evidence to support his claims against defendants.

Plaintiff's affidavit refers to three unidentified individuals, including two correctional officers (with whom he spoke some eight months after the November 12,

9

2007 incidents) and an inmate (with whom he spoke on November 8 or 9, 2007). Plaintiff states in his affidavit that the unidentified individuals will be subpoenaed for trial.

Hearsay statements can be considered on a motion for summary judgment if the statements are "capable of being admissible at trial," for example, through direct testimony. *Stelwagon Mfg. Co. v. Tarmac Roofing Sys.,* 63 F.3d 1267, 1275 n.17 (3d Cir. 1995); *see also J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990). Only when the out-of-court declarant is either unidentified or unavailable will the court refuse to consider the hearsay statements. *See Philbin v. Trans Union Corp.,* 101 F.3d 957, 961 n.1 (3d Cir. 1996); *see also In re Tire Worker Asbestos Litigation,* Civ. Nos. 88-4850, 88-4704, 88-4706, 88-4702, 1991 WL 148276, at *2 (E.D. Pa. July 30, 1991) (hearsay evidence offered in opposition to defendant's summary judgment motion could not be considered where "[t]here [was] no basis for concluding that the hearsay evidence on which [plaintiff] relied [d] could be introduced in admissible form at trial.").

Here, plaintiff has failed to identify the three individuals upon whose statements he relies, either because he does not know their names or because he chooses not to provide their names. If plaintiff cannot identify the three individuals, then certainly the evidence could not be introduced at trial. On the other hand, if plaintiff simply refuses to identify the individuals as part of his strategy, the attempt fails inasmuch as it is in contravention of the Federal Rules of Civil Procedure. *See Levenson v. Oxford Global Resources, Inc.*, Civ. No. 05-1639, 2007 WL 4370911 (W.D. Pa. Dec. 11, 2007) (citing *Se-Kure Controls, Inc. v. Vanguard Prods. Group, Inc.*, Civ. No. 02 C3767, 2007 WL 781250 at *1, *4 (N.D. Ill. Mar. 12, 2007) ("trial by ambush is incompatible" with Rule

10

26(a)(1)(A), which requires litigants to provide and supplement "the name[s] . . . of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses"). The unidentified individuals' statements averred by plaintiff would promote "trial by ambush" inasmuch as plaintiff's failure to identify the alleged declarants permits their statements to go unchecked and unchallenged by defendants through discovery. Finally, while plaintiff's affidavit states that he intends to call the unidentified individuals as witnesses, nothing in the record indicates that the unidentified individuals are available should this matter proceed to trial.

The court has no basis to conclude that the hearsay statements upon which plaintiff relies could be introduced in admissible form at trial. Accordingly, it will not consider the hearsay statements of the unidentified individuals set forth in plaintiff's affidavit that are found at paragraphs four and thirty. (*See* D.I. 253, ¶¶ 4, 30)

## B. *Heck v. Humphrey*

Defendants move for dismissal of plaintiff's claim that he was wrongfully removed from the Greentree Program. Defendants argue that the claim is barred by the doctrine set forth in *Heck v. Humphrey*.

This court has previously ruled that plaintiff "cannot recover under § 1983 for alleged wrongful incarceration unless he proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." (D.I. 174) (citation omitted). Plaintiff sought postconviction relief on this very issue, the State courts found there was no merit to the issue, and denied postconviction relief. Plaintiff is adamant in his

11

response that he is not challenging his incarceration ordered by the original judgment of

conviction.  Nonetheless, summary judgment is appropriate as a matter of law as to the

*Heck* issue, and the court will grant defendants' motion for summary judgment on the

issue.

## C. Entitlement to Greentree Program

Defendants move for summary judgment on the basis that plaintiff has no

entitlement to placement in the Greentree Program.  Plaintiff responds that he is not

claiming or alleging an entitlement to the Greentree Program and that the argument is a

red herring.

Prisoners have no constitutional right to drug treatment or other rehabilitation.

*See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("Prisoners have no constitutional

right to rehabilitation, education, or jobs."); *see also Abraham v. Delaware Dep't of

Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009) (not published); *Groppi v. Bosco*, 208 F.

App'x 113, 115 (3d Cir. 2006) (not published); *Abdul-Akbar v. Department of Corr.*, 910

F.Supp. 986, 1002 (D. Del. 1995); *see also Norris v. Frame*, 585 F.2d 1183 (3d Cir.

1978).  In addition, it is well established that an inmate does not possess a liberty

interest arising from the Due Process Clause in assignment to a particular custody level

or security classification or a place of confinement.  *See Wilkinson v. Austin*, 545 U.S.

209, 221-222 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v.

Fano*, 427 U.S. 215, 224-25 (1976); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976);

*Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).  Moreover, the custody, placement or

classification of state prisoners within the State prison system is among the "wide

12

spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225.

Defendants' position is well-taken and, to the extent plaintiff claims an entitlement to Greentree Program classification, the claim fails as a matter of law. Therefore, the court will grant defendants' motion summary judgment as to this issue.

## D. Placement and Removal from the Greentree Program

With regard to plaintiff's removal from the Greentree Program, defendants argue that summary judgment is appropriate as there is no evidence of record that they were aware of plaintiff's conditional sentence to the Greentree Program and they had no control over plaintiff's placement in the program. In addition, defendants argue there is no evidence they were aware of plaintiff's prior lawsuit or his complaint letters, nor is there evidence of a causal connection between the filing of plaintiff's prior lawsuit and his letters of complaint to the actions of Bryan and Smith. Plaintiff responds that Bryan and Smith retaliated against him for exercising his First Amendment rights and their actions caused his removal from the Greentree Program.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton,* 523 U.S. 574, 592 (1998); *Milhouse v. Carlson,* 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires that plaintiff demonstrate: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser*

13

*v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

Plaintiff argues that Smith and Bryan fabricated the assault on staff charge against him and this caused his removal from the Greentree Program. He contends that Smith and Bryan "knew full well" the consequences of their actions and that they were aware of his previously filed lawsuit and his efforts to have correctional officers arrested and prosecuted. Finally, he points to the short time between Smith and Bryan seeing his legal mailings and letters to the FBI and newspapers to the time that he was charged with assaulting staff.

Plaintiff provides argument aplenty but did not provide the court with evidence supporting his position. The facts demonstrate that plaintiff engaged in protected activity when he filed a lawsuit and wrote letters of complaint to a newspaper and governmental officials. Plaintiff was subjected to adverse actions a few days after writing his letters by Bryan, Smith, and Savage when he received disciplinary reports, was found guilty of the charges, and removed from the Greentree Program. While there is evidence that plaintiff saw the empty envelope addressed to the News Journal in a

14

trash can in the C/O's office, the record is silent on why the envelope was placed in the trash or who was responsible for placing it there. There is no evidence that, on November 12, 2007, Bryan, Smith, or Savage was aware of plaintiff's prior lawsuit or his letters of complaint. The record reflects, and plaintiff has failed to refute, that Bryan, Smith, and Savage were unaware of plaintiff's sentence during the relevant time period. Nor has plaintiff refuted the fact that his placement in the Greentree Program was determined by classification personnel and not any of the named defendants. Finally, the record reflects that, following a hearing and finding of guilt, plaintiff was disciplined for violating prison rules.

Based upon the evidence of record, a reasonable jury could not find in favor of plaintiff on the issue that his removal from the Greentree Program was a result of retaliation by defendants. Accordingly, the court will grant defendants' motion for summary judgment as to this issue.

### E. Respondeat Superior

Danberg and Phelps move for summary judgment on the grounds that the claims against them are supervisory in nature. They argue that there is no evidence of record of their involvement in the alleged constitutional deprivations. Plaintiff responds by referring to actions taken by Savage and McCreanor. He notes that he has written numerous letters to Danberg and Phelps, including a letter to Danberg dated November 28, 2007.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187,

210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and that, in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (not published) (citing *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1948-49 (2009); *Rode v. Dellarciprete*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948 (2009). In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal,* 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010), *cert. denied*, __U.S.__, 131 S.Ct. 2150 (2011) (quoting *Iqbal* 129 S.Ct. at 1949). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (second alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue*." Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *Santiago*, 629 F.3d at 130 n.8; *see, e.g., Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.) Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal*,

17

personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[15] *Williams v. Lackawanna County Prison*, Civ. No. 07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also Iqbal*, 129 S.Ct. at 1949-54; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (not published).

The record reflects that Phelps was not employed by the DOC during the relevant time period, having been hired as warden at the VCC after the events of November 2007. While the evidence of record indicates that plaintiff wrote to Danberg and Phelps, he did so after the events in question. It is well established that participation in the after-the-fact review of a grievance is not enough to establish personal involvement. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006)

---

[15]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

(not published) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation).

Defendants additionally argue that the evidence of record does not support plaintiff's failure to supervise or train claims. Absent direct involvement, a plaintiff can hold a supervisor liable for failure to train or supervise if the supervisor has shown deliberate indifference to the plight of the person involved. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of the potential for this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *See also Heggenmiller*, 128 F. App'x 240 (3d Cir. 2005).

Plaintiff responds by referring to actions taken by Savage and McCreanor. Plaintiff argues that deficient policies include a predisposed hearing officer, "a farce of a grievance system," and an atmosphere of pervasive unlawful malicious retaliation for the exercise of obvious rights and filing false affidavits in judicial proceedings, but provides no evidence to support his position. At most, plaintiff refers to a statement made by Savage during the disciplinary hearing over which he presided: when referring to disciplinary reports that plaintiff contends are false, Savage indicated that he had "to go by these write-ups." Savage's statement does not rise to the level of a constitutional violation nor does it point to a deficient policy with regard to disciplinary hearings.

19

Plaintiff's claims of failure to train and deficient policies are not borne by the record. There is no evidence of record of a policy that created an unreasonable risk of constitutional injury to plaintiff or that Danberg was indifferent to the risk. Nor is there is evidence of an injury to plaintiff inasmuch as he has no constitutional right to a particular classification or the drug and/or alcohol treatment program.

Phelps was not employed at the VCC during the events in question and, therefore, summary judgment is appropriate on his behalf. With regard to Danberg, based upon the evidence of record, no reasonable jury could find that he violated plaintiff's constitutional rights; that he expressly directed the deprivation of plaintiff's constitutional rights; that he created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation; or that he failed to train and supervise correctional staff. Accordingly, the court will grant defendants' motion for summary judgment as to the claims raised against Danberg and Phelps.

### F. Supplemental Claims

Plaintiff correctly notes that defendants failed to mention any of the supplemental state claims raised by him. However, after determining that summary judgment is appropriate for defendants, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c); *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 309 (3d Cir. 2003).

### V. CONCLUSION

Based upon the foregoing, the court will deny as moot plaintiff's motion to stay

and request for counsel and will grant defendants' motion for summary judgment.[16]

An appropriate order will issue.

---

[16]Because the court has determined defendants did not violate plaintiff's constitutional rights, the court will not address the issues of exhaustion of administrative remedies and qualified immunity.

21